NATIONAL SKEE-BALL COMPANY, INCORPORATED, complainant,

*v.*

FRANK SEYFRIED, defendant.

[Decided February 2d, 1932.]

*Messrs. Tumen & Tumen,* for the complainant.

*Mr. Lloyd C. Riddle,* for the defendant.

BERRY, V. C.

The bill prays an injunction against the defendant, and all persons claiming through him, restraining him and them from using certain skee-ball alleys in any place other than that specified in the license and agreements under which they were sold to the predecessor in title of the defendant. Other relief, which need not now be mentioned, is also sought.

The real question involved is whether a restrictive covenant may attach to personal property and bind successive purchasers with knowledge thereof.

Complainant is the manufacturer of an amusement device known as a skee-ball alley. It sold two of them to George P. Philps who agreed, in writing, to use them in "Trenton, New Jersey, or in any other part of the United States, providing there are no skee-ball alleys in operation or licensed for use at said place at time of removal."

The agreement contains further provisions as follows:

"This license expressly prohibits the use of game apparatus outside of the territory above mentioned, and prohibits the manufacture of such game apparatus by said licensee.

If the licensee fails to carry out the provisions, limitations and restrictions of this license, then this license may, at the option of the licensor, be revoked and terminated on written notice to the licensee or assignee thereof, their heirs, executors, administrators, successors or assigns, by leaving the same at the principal office or residence of or serving same personally on said parties or on any attendant where the game apparatus may be installed, and possession of the said game apparatus shall immediately revert to the licensor. This shall apply particularly to any change in price for nine balls or attempted use in any other place than named in this license.

In accepting this license the licensee admits the validity of all patents under which said game apparatus and products are manufactured, and hereby covenants and agrees not to question or contest the same in any manner whatsoever.

This license shall bind and enure to the benefit of the parties hereto, their heirs, executors, administrators, successors or assigns."

Philps and his asignee, Jake Malvern, carried on a skee-ball business in Trenton. A third apparatus was in use in Smyrna, Delaware, under a similar agreement made with one G. C. King.

The defendant bought the three alleys referred to and removed them to Manasquan, New Jersey, where he set them up in operation. There was no other skee-ball game in Manasquan at the time, and there is no allegation of a violation of the agreement so far as Manasquan is concerned. But the defendant moved the alleys to the borough of Seaside Park, Ocean county, New Jersey, and began business there a few days after he had been informed that the complainant had sold six alleys to the Shore Amusement Company, Incorporated, under an agreement by which the complainant gave that company the exclusive right to operate in that borough. This bill was then filed.

The apparatus is manufactured under letters patent; but although the bill of complaint refers to the patents, and there was considerable testimony with regard to them, the claim that the defendant was violating patent rights was withdrawn, and complainant's case was rested solely on the violation of the agreements made between the complainant (and its assignee) and the vendors of the defendant, it being contended, and satisfactorily proved, that the defendant acquired the three skee-ball alleys with knowledge of those agreements.

While an agreement between the seller and the purchaser of personalty limiting its use to a certain locality may be valid as between the immediate parties I am not ready to hold that such a covenant runs with the property. The trend of judicial action is opposed to limitations and restrictions of the alienability of personal property.

The leading statement of the position taken by American courts is expressed by Mr. Justice Lurton, while a circuit court judge, in *John D. Park and Sons. Co.* v. *Hartman, 153 Fed. Rep. 24.* On page 38 he said:

"A prime objection to the enforcibility of such a system of restraint upon sales and prices is that they offend against the ordinary and usual freedom of traffic in chattels or articles which pass by mere delivery.

"The right of alienation is one of the essential incidents of a right of general property in movables, and restraints upon alienation have been generally regarded as obnoxious to public policy, which is best subserved by great freedom of traffic in such things as pass from hand to hand. General restraint in the alienation of articles, things, chattels, except when a very special kind of property is involved such as a slave or an heirloom, have been generally held void. 'If a man,' says Lord Coke, in *Coke on Littleton,* ¶ *360,* 'be possessed of a horse or any other chattel or personal and give his whole interest or property therein upon condition that the donee or vendee shall not alien the same, the same is void, because his whole interest and property is out of him so as he hath no possibility of reverter; and it is against trade and traffic and bargaining and contracting between man and man.' It is also a general rule of the common law that a contract restricting the use or controlling subsales cannot be annexed to a chattel so as to follow the article and obligate the subpurchaser by operation of notice. * * * A covenant which may be valid and run with the land will not run with or attach itself to a mere chattel. * * * Undoubtedly the restrictions imposed by the complainant upon sales and resales, if valid at all, are only so because they constitute personal contracts, upon which an action will lie against the contracting party."

The Supreme Court of the United States adopted this language in the case of *Dr. Miles Medical Co.* v. *John D. Park and Sons Co., 220 U. S. 373.* See, also, *In re Consolidated Factors Corp., 46 Fed. Rep. (2d) 561,* where Judge Woolsey, of the United States District Court for the southern district of New York, reaffirmed the general rule and referred to the English case of *Lord Strathcona Steamship Co., Ltd.,* v. *Dominion Coal Co., Ltd. (1926), Appeal Cases 108,* affirming a decision of the Nova Scotia supreme court, in which he had appeared as counsel, as a rare exception to the general rule.

The rule has been relaxed, however, in certain instances; for example, in connection with the sale of a business where

covenants of the vendor to refrain from competing with his vendee have been held to run with the business to a subsequent purchaser thereof. *Langberg* v. *Wagner, 101 N. J. Eq. 383.*

And a contract made by an employe not to solicit orders from his employer's customers within one year after the termination of his employment passed, without specific reference thereto, with a sale of the business by the employe. *A. Fink & Sons* v. *Goldberg, 101 N. J. Eq. 644.* A business is one of the "very special kinds of property" referred to by Mr. Justice Lurton. It is not a chattel which passes by simple delivery. It is usually a collection of goods and chattels; often including lists of customers, trade names, trade-marks, good will, secret processes and formulæ, all, or much of which the vendor could render valueless by a violation of his covenant to refrain from competition for a reasonable time within a reasonable area. Even covenants of this character are not enforceable, however, if they are unreasonable.

Here there was no sale of a business and there was no assignment of the agreements to the defendant.

He bought nothing more than the tangible property which made up the skee-ball alleys; and title passed by delivery, without anything more. There is no description of these alleys. The evidence is that they were taken apart, loaded on trucks and carted to Manasquan; and then disassembled again and taken to Seaside Park. Whatever good will may have attached to the business of operating the games in Trenton and Delaware was terminated when the businesses were discontinued in those localities.

There was no privity of contract either direct or by way of assignment between the complainant and the defendant, and that lack of privity could well be set up by complainant if the situation here were reversed, and if the defendant were seeking to enjoin the complainant from violating the agreements.

Counsel have not cited and my own research has not revealed a single case in this state or elsewhere in which the courts have favored the attachment of equitable servitude

on chattels title to which passes with delivery.. The absence of precedent alone, however, would not deter me from granting relief if I were convinced that relief should be granted.

"The principles of equity will be applied to new cases as they are presented, and relief will not be withheld merely on the ground that no precedent can be found. * * * It is no objection to the exercise of jurisdiction that, in the ever changing phases of social relations, a new case is presented and new features of wrong are involved. * * * · While it is true that equity will make a precedent to fit a case novel in incident, yet in my judgment the facts of the case must come within some head of equity jurisprudence." Walker, vice-chancellor, .in *Earle* v. *American Sugar Refining Co.,* *74 N. J. Eq. 751* (at *p. 761*).

.My views on this subject were confirmed and strengthened after reading a comprehensive article in volume 41 of the Harvard Law Review entitled "Equitable Servitude on Chattels," by Professor Zechariah Chaffee, Jr., and several other legal treatises referred to by him.

I shall advise a decree dismissing the bill.