Johnson Johnson. Bristol-Myers Company, corporations of this state, Colgate-Palmolive-Peet Company and Lambert Pharmacal Company, corporations of the State of Delaware, bring this bill as the result of alleged acts performed of a similar nature, against Harry Weissbard and Max Weissbard, trading as Weissbard Brothers, which acts so performed are alleged to have violated the rights of complainants each individually, and in the same manner, and pray an injunction restraining defendants from selling, advertising for sale or *Page 316 
offering for sale products of complainants at less than the prices fixed by complainants.
Complainants manufacture and sell pharmaceutical preparations, surgical dressings, medicated toilet articles and tooth brushes, with the right to use trade-marks, brands, names, labels and copyrights identifying their respective products. Complainants charge that some years ago there was developed in the trade a practice of cutting prices, both wholesale and retail, and that such practices were engaged in by stores known as "Cut Rate Stores," with the result that the trade became wholly disorganized and legislation was passed in various states including New Jersey, namely, chapter 58 of the laws of 1935, page 140, generally known as the "Fair Trade act," which act provides:
"1. No contract relating to the sale or resale of a commodity which bears, or the label or content of which bears, the trade-mark, brand, or the name of the producer or owner of such commodity and which is in fair and open competition with commodities of the same general class produced by others shall be deemed in violation of any law of the State of New Jersey by reason of any of the following provisions which may be contained in such contract.
"(a) That the buyer will not resell such commodity except at the price stipulated by the vendor.
"(b) That the vendee or producer require in delivery to whom he may resell such commodity to agree that he will not, in turn, resell except at the price stipulated by such vendor or such vendee.
"Such provisions in any contract shall be deemed to contain or imply conditions that such commodities may be resold without reference to such agreement in the following cases:
"(a) In closing out the owners' stock for the purpose of discontinuing delivering any such commodity.
"(b) When the goods are damaged or deteriorated in quality, and notice is given the public thereof.
"(c) By any officer acting under orders of any court.
"2. Willfully and knowingly advertising, offering for sale or selling any commodity at less than the price stipulated in any contract entered into pursuant to the provisions of section one of this act, whether the person so advertising, offering for sale or selling is or is not a party to such contract, is unfair competition and is actionable at the suit of any person damaged thereby.
"3. This act shall not apply to any contract or agreement between wholesalers or between producers or between retailers as to sale or resale prices.
"4. The following terms, as used in this act, are defined as follows:
"`Producer' means grower, baker, maker, manufacturer or publisher. *Page 317 
"`Commodity' means any subject of commerce.
"5. If any provision of this act is declared unconstitutional it is the intent of the Legislature that the remaining portions thereof shall not be affected but that such remaining portions shall remain in full force and effect."
The bill alleges that the complainants to protect themselves as the owners of their respective trade-marks, brands and names identifying their product and to protect their respective trade and the public in the State of New Jersey against injurious and uneconomic practices recognized by the Fair Trade act, availed themselves of the protection thereof and adopted a system of doing business with respect to said products whereby each complainant established prices for resale of its products within the state, and announced to the trade that its products could not be resold at retail in this state except at certain fixed and established prices, and each complainant to make the system effective, requested contracts from retailers, under the terms of which the retailers would agree not to resell at less than the prices fixed by complainants and likewise fixed the prices at which the product might be resold by wholesalers and requested contracts from such wholesalers. Copies of such contracts are annexed to the bill of complaint.
The defendants operate stores in Newark and are charged to have so conducted their business as to be generally known as "Cut Rate Stores" and as acting in a manner with respect to "cut rating" as that the public policy evidenced by the adoption of the legislative act referred to would be completely destroyed, and have refused to enter into any contracts with complainants with respect to resale prices, wherefore complainants have refused to sell directly to defendants notwithstanding which fact the defendants have acquired from time to time, and now have products of complainants which with full knowledge on the part of the defendants of the system under which complainants are operating, and of the prices fixed by complainants for the resale of their products, have publicly by advertisement and by offering at their stores, offered said products to the public at "cut rates" in direct *Page 318 
violation of the rights of the complainants under the "Fair Trade act." Specific instances of such sales are set forth in the bill of complaint.
The complainants pray discovery of the source of the stock of complainants' products which defendants have and are offering for sale, and that the defendants be enjoined from selling, advertising for sale or offering for sale, products of complainants at less than the prices fixed by complainants even though the defendants did not sign any contract with complainants.
The defendants answering, say:
(1) That the statute as applied to the defendants, and particularly the sale by them of articles manufactured and produced by the complainants and purchased by the defendants in interstate commerce is illegal in that it violates article 1, section 8, clause 3 of the constitution of the United States relating to commerce between the several states and with foreign nations, for the reason that the statute regulates, burdens and hampers commerce between the defendants, citizens of this state and other citizens residents of other states.
(2) That the statute purports to delegate to complainants and other producers and manufacturers of patent, trade-mark and branded commodities, the power to fix the retail selling prices of such commodities in this state in violation of article 4, section 1 of the constitution of this state which vests the power to legislate in the assembly and senate of the State of New Jersey, subject to the approval of the governor.
(3) That the business of advertising, offering for sale and selling commodities bearing the trade-mark, brand or name of the producer or owner is not a business affected with a public interest and that the statute authorizes and permits manufacturers and producers of the commodities mentioned to fix and establish the retail selling price thereof throughout the state in violation of article 1, sections 1 and 16 of the constitution of this state, and section 1 of the fourteenth amendment to the constitution of the United States, in that it seeks to deprive the defendants and others of their liberty and property without due process of law. *Page 319 
(4) That the statute authorizes and permits the fixation of retail sales prices for trade-marked or branded commoditieswithout (a) prescribing standards for the fixation of such prices; (b) requiring notice to persons affected by the fixation of such prices or an opportunity to said persons to be heard with respect thereto; (c) limiting or confining the prices so fixed to amounts which are reasonable and necessary for the protection of the respective persons concerned therewith; (d) failing to indicate which of several prices fixed for the same commodity is to govern a retailer who is not himself a party to a contract fixing retail selling prices; (e) permits arbitrary, willful and malicious discrimination between retailers by empowering the manufacturer or producer of the commodities to enter into dissimilar contracts containing different provisions as to retail selling prices.
The matter now before me is the motion of complainants to strike that portion of the answer setting forth the foregoing defenses. Complainants' cause of action is founded upon the statute, and counsel are in agreement that the matters of law thus raised by the answer should first be determined.
In support of the motion complainants' counsel contends that no constitutional question either state or federal is here involved. The immediate effect of the statute, counsel submits, is to obliterate that principle of the common law resting upon public policy only, which prevents a contract from arising on the part of a purchaser not to resell at less than the minimum price fixed by the producer if the purchaser acquires the product with knowledge of the resale price fixed. In other words, that the statute imposes a restraint on alienation of personal property based upon an implied contract which arises only when there is knowledge on the part of the purchaser at the time of his purchase of the price fixed, since before he can be held to have violated the implied contract he must have "willfully and knowingly" advertised for sale or sold the product at less than the stipulated price. It is further contended that the statute permits a condition such as under the common law would run with the land (if the subject-matter were land) to run with personal property, and *Page 320 
permits the creation of an equitable servitude on chattels in that it provides that a person who buys the chattels with knowledge of the servitude shall be found thereby as upon a contract arising from the act of purchasing with knowledge of the servitude.
The real question presented by this contention is whether a restrictive price may attach to personal property and bind successive purchasers merely with knowledge thereof.
An agreement between the seller and the purchaser of personalty as to price may be valid as between the immediate parties but there is marked objection to the enforceability of such a system of restraint upon sales and prices in that they offend against the ordinary and usual freedom of traffic in chattels or articles which pass by mere delivery. National Skee-Ball Co., Inc., v.Seyfried, 110 N.J. Eq. 18.
"The right of alienation is one of the essential incidents of a right of general property in movables, and restraints upon alienation have been generally regarded as obnoxious to public policy, which is best subserved by great freedom of traffic in such things as pass from hand to hand. General restraint in the alienation of articles, things, chattels, except when a very special kind of property is involved * * * have been generally held void. * * * It is also a general rule of the common law that a contract restricting the use or controlling subsales cannot be annexed to a chattel so as to follow the article and obligate the subpurchaser by operation of notice. * * * A covenant which may be valid and run with the land will not run with or attach itself to a mere chattel." John D. Park Sons Co. v. Hartman,153 Fed. Rep. 24, 39. But it is urged by counsel that in the case ofDr. Miles Medical Co. v. John D. Park Sons Co.,220 U.S. 373, Mr. Justice Hughes said: "Nor can the manufacturer by rule and notice, in the absence of contract or statutory right, even though the restriction be known to purchasers, fix prices for future sales. It has been held by this court that no such privilege exists under the copyright statutes, although the owner of the copyright has the sole right *Page 321 
to vend copies of the copyrighted production. Bobbs-Merrill Co.
v. Straus, 210 U.S. 339; 52 L.Ed. 1086; 28 Sup. Ct. Rep. 722.
There the court said (at p. 351): `The owner of the copyright in this case did sell copies of the book in quantities and at a price satisfactory to it. It has exercised the right to vend. What the complainant contends for embraces not only the right to sell the copies, but to qualify the title of a future purchaser by the reservation of the right to have the remedies of the statute against an infringer because of the printed notice of its purpose so to do unless the purchaser sells at a price fixed in the notice. To add to the right of exclusive sale the authority to control all future retail sales, by a notice that such sales must be made at a fixed sum, would give a right not included in the terms of the statute, and, in our view, extend its operation, by construction, beyond its meaning, when interpreted with a view to ascertaining the legislative intent in its enactment.'" (Italics mine.)
In brief the argument of counsel for the complainants is reduced to the statement that the only reason why a manufacturer or producer cannot fix prices for resale by rule or notice, even though the restriction be known to the purchaser, is only because it is opposed to public policy, and that the effect of the statute here under consideration is simply to change that public policy.
That argument does not meet the objections raised on constitutional grounds to the validity of the statute. Under the statute if the defendants purchased complainants' merchandise in the State of New York from a person who bought free of restriction (a statute identical with the one here under consideration having been declared unconstitutional in that state by the court of appeals (Doubleday, Doran Co., Inc., v. R.H.Macy Co., Inc., 269 N.Y. 272), or in a state where no such statute exists and then brought the merchandise into New Jersey, at that moment, as a result of the statutory provision, according to defense counsel, there attaches to the merchandise a restriction as to price and an equitable servitude. Thus the manufacturer and producer is given the power to fix prices byedict. And as was said by Mr. Justice *Page 322 
Cardozo of the United States supreme court in A.L.A. SchechterPoultry Corp. v. United States of America, 295 U.S. 495, 553;79 L.Ed. 1592, "this is delegation running riot."
Section 1 of the statute enables a manufacturer, producer or owner of an article bearing a trade-mark or trade name to enter into contracts fixing the resale price. Section 2 requires allretailers who learn of the contract to observe the established price schedules. Failure so to do becomes unfair competition and actionable at the instance of any person damaged thereby.
A similar statute passed in the State of Minnesota provides: "Any person * * * who shall discriminate between different sections, localities, communities or cities of this state, by purchasing such commodity (milk or dairy products) at a higher price or rate in one locality than is paid for the same commodity by said person * * * in another locality, * * * shall be deemed guilty of unfair discrimination, and, upon conviction thereof, shall be punished by a fine not exceeding one hundred dollars." The United States supreme court said of this statute: "Enforcement of the statute would amount to fixing the price at which plaintiff in error may buy, since one purchase would establish this for all points without regard to ordinary trade conditions." Viewed as price-fixing legislation the court held the statute unconstitutional. Fairmont Creamery Co. v.Minnesota, 274 U.S. 1; 71 L.Ed. 893.
The statute here goes further. In the Minnesota case the dealer was free to select his own price in the first instance. The limitation upon his liberty of contract was that the price selected must be uniformly maintained throughout the state. The statute here permits the manufacturer to fix not only his own price but the price of all retailers including those persons with whom he has no contractual dealing. As was said by the New York court of appeals in Doubleday, Doran Co., Inc., v. R.H. Macy Co., Inc., supra, in construing the Fair Trade act in that state (identical in language with our own) in holding the statute unconstitutional, "for a *Page 323 
publisher to agree with its subsidiary or agent to the price of a book which shall thereafter bind all other parties who purchase like books from the publisher is in reality a method whereby the legislature fixes the price; it is a species of delegated authority."
Again, the statute reposes novel and drastic power in the hands of the manufacturers and producers rather than in some governmental agency. "The legislature indubitably had power to vest a large measure of discretionary authority in the agency charged with the administration of a law, enacted in pursuance of the police power, to secure the health and safety of the people. This authority is one of common exercise; * * * It is only necessary that the statute establish a sufficient basic standard — a definite and certain policy and rule of action for the guidance of the agency created to administer the law." State, exrel. State Board of Milk Control v. Newark Milk Co., 118 N.J. Eq. 504,522. Here the statute delegates and invests power, not in an agency charged with the administration of law, but in individuals, and without a definite policy and rule of action for the guidance of such individuals in the administration of the act.
Moreover, the act deals with commodities generally which bear the trade-mark, brand or the name of the producer and which are "in fair and open competition with commodities of the same general class produced by others." The word "commodity" is defined by the act to mean "any subject of commerce." Therefore, the act, without limit, includes commodities, many of which are certainly not affected with a public interest, and deprives the defendants and other retailers of their property and liberty of contract without due process of law. To be specific and to apply the test to the instant complaint, the bill alleges that what was sold by defendants in violation of the act is dental cream, shaving cream, baby powder, listerine, sal hepatica and tooth brushes. In Dr. Miles Medical Co. v. John D. Park Sons Co.,supra, it was said: "There may be necessaries that sooner or later must be dealt with like short rations in a shipwreck, but they are not Dr. Miles' medicines." And here it may be said, neither are *Page 324 
they dental cream, shaving cream, baby powder, listerine, sal hepatica and tooth brushes.
Price-fixing statutes necessarily curtail freedom of contract. Legislation establishing prices for commodities or services generally, have usually been held unconstitutional. Adkins v.Children's Hospital, 261 U.S. 525; 67 L.Ed. 785; Chas. WolffPacking Co. v. Court of Industrial Relations, 262 U.S. 522;67 L.Ed. 1103. Price-fixing legislation necessitated by a crisis or emergency, or imposed upon a business affected with a public interest is excepted from the general rule. Businesses said to be clothed with a public interest justifying some public regulation are classified and set forth by Chief-Justice Taft in WolffPacking Co. v. Court of Industrial Relations, supra. Mr. Justice Rosenman of the New York supreme court enlarged upon this classification in Coty, Inc., v. Hearn Department Stores,284 N Y Supp. 909, 916, as follows: "First, those where the commodities were `affected with a public interest' or `devoted to a public use.' i.e., so intimately bound up with the public interest or public welfare that the industry itself and the prices charged therein are subject to control for the public good; second, instances where the state has determined that the public health, morals, safety, or welfare (generally included within the objects of its `police power') depend upon the maintenance of fixed prices: third, instances where prices of commodities other than those included in the first two are fixed by reason of a compelling emergency which justifies such interference by the state.
Within the first class are included such cases as Munn v.Illinois, 94 U.S. 113; 24 L.Ed. 77 (rates for storage in grain elevators); German Alliance Insurance Co. v. Lewis,Superintendent of Insurance of State of Kansas, 233 U.S. 389;34 S.Ct. 612; 58 L.Ed. 1011; L.R.A. 1915C, 1189 (insurance business). Within the second and third classifications are included cases such as People, ex rel. Durham Realty Corp. v.La Fetra, 230 N.Y. 429; 130 N.E. Rep. 601; 16 A.L.R. 152; MarcusBrown Holding Co. v. Feldman, 256 U.S. 170; 41 S.Ct. 465;65 L.Ed. 877 (fixing standards for reasonable rents of real property); Nebbia v. New York, supra (fixing the price of milk)." *Page 325 
In all these and similar cases the prices were fixed by the state itself or by some governmental agency exercising the legislative power of the state.
No authority can be found where either the New Jersey or the federal courts have upheld the constitutionality of a statute regulating the price of ordinary commodities generally sold by ordinary businesses. There are a multitude of cases invalidating state statutes purporting to regulate the prices of such commodities. Tyson Brother v. Banton, 273 U.S. 418 (price of theatre tickets); Ribnick v. McBride, 277 U.S. 350 (fees of employment agencies); Wolff Packing Co. v. Court ofIndustrial Relations, supra (wages); Fairmont Creamery Co. v.Minnesota, supra (price of cream); Williams v. Standard OilCo., 278 U.S. 235 (price of gasoline); People v. Gillson,109 N.Y. 389 (price of food); see, also, New State Ice Co. v.Liebmann, 285 U.S. 262 (requiring licenses of ice dealers).
The commodities here bear no such relation to the public as to warrant their inclusion in the category of businesses charged with a public use. They differ in no essential respect from a great variety of other articles commonly bought and sold by merchants and private dealers throughout the country.
The statute is designed to eliminate competition among retailers. Free competition has characterized the retail trade in this country since we became a nation. It does not appear that the business of complainants' trade-marked or branded articles suffers from a crisis or an emergency. Even where such legislation born of an emergency is upheld, it must provide a limitation of duration. Vanderbilt v. Brunton Piano Co.,111 N.J. Law 596. Such limitation and recitation of emergency is here absent.
Mr. Justice Rosenman in holding the "Fair Trade act" of New York unconstitutional said: "Firstly, it definitely legalized any agreement for the sale of a commodity between a producer and a retailer, forbidding the retailer to sell the commodity at a price other than the one stipulated by the producer. Secondly, in order to compel compliance with such fixed resale price upon those who refused to sign such agreements, *Page 326 
the statute sought to prevent anyone, whether a party to such a contract or not, to sell the commodity at less than the price stipulated in any contract entered into pursuant to the first provision of the act."
I am aware of the fact that the supreme court of California inMax Factor Co. v. Kunsman (California Supreme Court,February 27th, 1936), 55 Pac. Rep. 2d 177, held the "Fair Trade act" in that state constitutional. With the reasoning employed by that court in its opinion I do not agree.
For the reasons above given I conclude that the act in question violates both the state and federal constitutions in the respects complained of by the defendants in their answer.
The motion to strike the portions of the answer herein set forth at length is denied. *Page 327