## BOBBS–MERRILL COMPANY, *v.* STRAUS *et al.,* DOING BUSINESS AS R. H. MACY & COMPANY.

### APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 176. Argued March 12, 13, 1908.—Decided June 1, 1908.

There are differences between the patent, and the copyright, statutes in the extent of the protection granted by them, and the rights of a patentee are not necessarily to be applied by analogy to those claiming under copyright.

At common law an author had a property in his manuscript and might have redress against any one undertaking to publish it without his authority.

Copyright property under the Federal law is wholly statutory and depends upon the rights created under acts of Congress passed in pursuance of authority conferred by § 8 of Art. I of the Federal Constitution.

The copyright statutes are to be reasonably construed. They will not by judicial construction either be unduly extended to include privileges not intended to be conferred, nor so narrowed as to exclude those benefits that Congress did intend to confer.

The sole right to vend granted by § 4952, Rev. Stat., does not secure to the owner of the copyright the right to qualify future sales by his vendee or to limit or restrict such future sales at a specified price, and a notice in the book that a sale at a different price will be treated as an infringement is ineffectual as against one not bound by contract or license agreement.

147 Fed. Rep. 15, affirmed.

THE facts are stated in the opinion.

*Mr. W. H. H. Miller,* with whom *Mr. C. C. Shirley* and *Mr. Samuel D. Miller* were on the brief, for appellant:

The matter here involved is of statutory copyright alone; no question of common-law rights or property of either the

author or publisher is presented.  Appellant claims the right to control the price under the provision of the statute which gives the owner of a copyright the "sole" right of "vending," in strict analogy to the right of the owner of a patent to control the price of the patented article under the statutory use of the same word.

The analogy is complete between the case at bar and those numerous patent cases wherein the courts have upheld the right of patentees to impose restrictions upon the sale of the patented article or its products and to exercise a certain control over the thing sold after the completion of the sale.  *Edison Phonograph Co.* v. *Kaufmann et al.*, 105 Fed. Rep. 960; *Edison Phonograph Co.* v. *Pike*, 116 Fed. Rep. 863; *National Phonograph Co.* v. *Schlegel et al.*, 128 Fed. Rep. 733; *Heaton-Peninsular-Button-Fastener Co.* v. *Eureka &c. Co.*, 77 Fed. Rep. 288; *Cortelyou* v. *Lowe*, 111 Fed. Rep. 1005; *Victor Talking Machine Co.* v. *The Fair*, 123 Fed. Rep. 424.  Numerous other cases might be cited.  See also *Dickerson* v. *Tinling*, 84 Fed. Rep. 192; *Dickerson* v. *Matheson*, 57 Fed. Rep. 524.

 The power of the owner of the patent to limit price has been expressly decided by this court.  *Bement* v. *National Harrow Co.*, 186 U. S. 70; *National Phonograph Co.* v. *Schlegel*, 128 Fed. Rep. 733; *Edison Phonograph Co.* v. *Pike* 116 Fed. Rep. 863.  See also: *Cortelyou et al.* v. *Johnson & Co.*, 138 Fed. Rep. 110; *A. B. Dick Co.* v. *Roper*, 126 Fed. Rep. 966; *Brodrick Copygraph Co.* v. *Roper*, 124 Fed. Rep. 1019; *Cotton Tie Co.* v. *Simmons*, 106 U. S. 89; *Morgan Envelope Co.* v. *Albany Paper Co.*, 152 U. S. 425.

*Mr. John G. Carlisle* and *Mr. Edmond E. Wise* for appellees:

The right, claimed by appellants, to control the retail price of books which have passed out of their possession, is not granted by the provisions of the statute which gives the owner of a copyright the sole right of vending.  *Publishing Co.* v. *Smythe,* 27 Fed. Rep. 914; *Harrison* v. *Maynard-Merrill Co.*, 61 Fed. Rep. 689; *Clemens* v. *Estes*, 22 Fed. Rep. 899; *Publish-*

*ing Co.* v. *Smith,* 27 Fed. Rep. 914; *Werckmeister* v. *American Lithographic Co.,* 134 Fed. Rep. 321; *Doan* v. *American Book Co.,* 105 Fed. Rep. 772; *Kipling* v. *G. P. Putnam's Sons,* 120 Fed. Rep. 631; *Bobbs-Merrill Co.* v. *Snellenburg,* 131 Fed. Rep. 530.

Owing to the difference both in the theory and the letter of the patent and copyright statutes, the patent cases relied upon by complainant are inapplicable to the question of copyright here presented.

MR. JUSTICE DAY delivered the opinion of the court.

The complainant in the Circuit Court, appellant here, the Bobbs-Merrill Company, brought suit against the respondents, appellees here, Isidor Straus and Nathan Straus, partners trading as R. H. Macy & Company, in the Circuit Court of the United States for the Southern District of New York, to restrain the sale of a copyrighted novel, entitled " The Castaway," at retail at less than one dollar for each copy. The Circuit Court dismissed the bill on final hearing. 139 Fed. Rep. 155. The decree of the Circuit Court was affirmed on appeal by the Circuit Court of Appeals. 147 Fed. Rep. 15.

The appellant is the owner of the copyright upon " The Castaway," obtained on the eighteenth day of May, 1904, in conformity to the copyright statutes of the United States. Printed immediately below the copyright notice on the page in the book following the title page is inserted the following notice:

" The price of this book at retail is one dollar net. No dealer is licensed to sell it at a less price, and a sale at a less price will be treated as an infringement of the copyright.

"THE BOBBS–MERRILL COMPANY."

Macy & Company, before the commencement of the action, purchased copies of the book for the purpose of selling the same at retail. Ninety per cent of such copies were purchased by them at wholesale at a price below the retail price by about

forty per cent, and ten per cent of the books purchased by them were purchased at retail, and the full price paid therefor.

It is stipulated in the record:

Defendants, at the time of their purchase of copies of the book, knew that it was a copyrighted book and were familiar with the terms of the notice printed in each copy thereof, as above set forth, and knew that this notice was printed in every copy of the book purchased by them.

The wholesale dealers, from whom defendants purchased copies of the book, obtained the same either directly from the complainant or from other wholesale dealers at a discount from the net retail price, and at the time of their purchase knew that the book was a copyrighted book and were familiar with the terms of the notice printed in each copy thereof, as described above, and such knowledge was in all wholesale dealers through whom the books passed from the complainants to defendants. But the wholesale dealers were under no agreement or obligation to enforce the observance of the terms of the notice by retail dealers or to restrict their sales to retail dealers who would agree to observe the terms stated in the notice.

The defendants have sold copies of the book at retail at the uniform price of eighty-nine cents a copy, and are still selling, exposing for sale and offering copies of the book at retail at the price of eighty-nine cents per copy, without the consent of the complainant.

Much of the argument on behalf of the appellant is based upon the alleged analogy between the statutes of the United States securing patent rights to inventors and the copyright acts securing rights and privileges to authors and others. And this analogy, it is contended, is so complete that decisions under the patent statutes in respect to the rights claimed in this suit under the copyright act are necessarily controlling.

In the main brief submitted by the learned counsel for the appellant it is said:

"All of the argument has been upon the assumption that

the very numerous decisions of the Circuit Courts and Circuit Courts of Appeals, such as the *Heaton-Peninsular case* [*Button-Fastener case*], 77 Fed. Rep. 288, the *Victor Talking Machine case,* 123 Fed. Rep. 424, and others along the same line, as well as the *Cotton Tie case* in this court, upholding this restriction, with reference to sales of patented articles, express the law; and we have been especially confident that such must be the case, for the reason that this court, in *Bement* v. *National Harrow Company,* 186 U. S. page 70, has given its sanction to the broad doctrines laid down in the *Heaton-Peninsular case,* 77 Fed. Rep. 288."

The present case involves rights under the copyright act. The facts disclose a sale of a book at wholesale by the owners of the copyright, at a satisfactory price, and this without agreement between the parties to such sale obligating the purchaser to control future sales, and where the alleged right springs from the protection of the copyright law alone. It is contended that this power to control further sales is given by statute to the owner of such a copyright in conferring the sole right to "vend" a copyrighted book.

A case such as the present one, concerning inventions protected by letters patent of the United States, has not been decided in this court, so far as we are able to discover. In the so-called *Cotton Tie case* (*Cotton Tie Co.* v. *Simmons,* 106 U. S. 89), the complainant company owned patents for improvements in metallic cotton-bale ties, and these cotton-bale ties were manufactured by the patentee, and stamped in the buckles were the words: "Licensed to use once only." After the bands had been severed at the cotton mill the respondent bought them and the buckles as scrap iron, rolled and straightened the pieces of the bands, and rivetted their ends together. He then cut them into proper lengths and sold them, with the buckles, to be used as ties.

The report of this case in the Circuit Court for the District of Rhode Island is found in 3 Banning & Arden, 320; *S. C.,* 1 Fed. Cases, No. 293, p. 623. The report shows that Judge

Shepley dismissed the bill on the ground that the attempted restriction to a single use by the words stamped on the buckle was not one which the patentee was entitled to impose, as the sale of the patented article, as an ordinary article of commerce, had taken it outside of the limits of the patent monopoly, and that the purchaser took unrestricted title to the buckle, without any reservation in the vendor. This court reversed that decision, holding that the reconstructed ties were not a repair of the old article, but a recreation of the subject of the patent, and, therefore, an infringement. Mr. Justice Blatchford, in delivering the opinion of the court, said:

"Whatever right the defendants could acquire to the use of the old buckle, they acquired no right to combine it with a substantially new band, to make a cotton-bale tie. They so combined it when they combined it with a band made of the pieces of the old band in the way described. What the defendants did in piecing together the pieces of the old band was not a repair of the band or the tie, in any proper sense. The band was voluntarily severed by the consumer at the cotton mill, because the tie had performed its function of confining the bale of cotton in its transit from the plantation or the press to the mill. Its capacity for use as a tie was voluntarily destroyed. As it left the bale it could not be used again as a tie. As a tie the defendants reconstructed it, although they used the old buckle without repairing that."

That the case was not decided as one of restricted license, because of the words stamped on the buckle, is shown by the language of Mr. Justice Blatchford in concluding his opinion:

"We do not decide that they are liable as infringers of either of the three patents, merely because they have sold the buckle considered apart from the band or from the entire structure as a tie."

We cannot agree that any different view of the *Cotton Tie case* was indicated in the comments of the learned justice, speaking for this court, in *Morgan Envelope Co.* v. *Albany Paper Co.*, 152 U. S. 425, 433. What was there said in con-

nection with the quotation from the opinion of Mr. Justice Blatchford in the *Cotton Tie case* enforces the view that the case was one of infringement, because of the reconstruction of the patented device.

In *Bement* v. *National Harrow Co.*, 186 U. S. 70, the suit was between the owners of the letters patent as licensor and licensees, seeking to enforce a contract as to the price and terms on which the patented article might be dealt with by the licensee. The case did not involve facts such as in the case now before us, and concerned a contract of license sued upon in the state court, and, of course, does not dispose of the questions to be decided in this case.

The question was supposed to be involved in the recent case of *Cortelyou* v. *Johnson*, 207 U. S. 196, where a patented machine, known as the Neostyle, was sold with a license, printed on the baseboard of the machine, limiting the use thereof to certain paper, ink and other supplies, made by the Neostyle company. While the question as to the validity of such license restriction was fully and ably argued by counsel, the case went off upon the finding that notice of the license restriction was not brought home to the defendant company.

If we were to follow the course taken in the argument, and discuss the rights of a patentee, under letters patent, and then, by analogy, apply the conclusions to copyrights, we might greatly embarrass the consideration of a case under letters patent, when one of that character shall be presented to this court.

We may say in passing, disclaiming any intention to indicate our views as to what would be the rights of parties in circumstances similar to the present case under the patent laws, that there are differences between the patent and copyright statutes in the extent of the protection granted by them. This was recognized by Judge Lurton, who wrote a leading case on the subject in the Federal courts (*The Button Fastener Case*, 77 Fed. Rep. 288), for he said in the subsequent case of *Park & Sons* v. *Hartman*, 153 Fed. Rep. 24:

"There are such wide differences between the right of multiplying and vending copies of a production protected by the copyright statute and the rights secured to an inventor under the patent statutes, that the cases which relate to the one subject are not altogether controlling as to the other."

We therefore approach the consideration of this question as a new one in this court, and one that involves the extent of the protection which is given by the copyright statutes of the United States to the owner of a copyright under the facts disclosed in this record. Recent cases in this court have affirmed the proposition that copyright property under the Federal law is wholly statutory, and depends upon the right created under the acts of Congress passed in pursuance of the authority conferred under Article I, § 8, of the Federal Constitution: "To promote the progress of science and useful arts, by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries." *American Tobacco Co.* v. *Werckmeister,* 207 U. S. 284; *White-Smith Music Co.* v. *Apollo Co.,* 209 U. S. 1; following the previous cases of *Wheaton* v. *Peters,* 8 Pet. 590; *Bank* v. *Manchester,* 128 U. S. 244–253; *Thompson* v. *Hubbard,* 131 U. S. 123–151.

The learned counsel for the appellant in this case in the argument at bar disclaims relief because of any contract, and relies solely upon the copyright statutes, and rights therein conferred. The copyright statutes ought to be reasonably construed with a view to effecting the purposes intended by Congress. They ought not to be unduly extended by judicial construction to include privileges not intended to be conferred, nor so narrowly construed as to deprive those entitled to their benefit of the rights Congress intended to grant.

At common law an author had a property in his manuscript and might have redress against any one who undertook to realize a profit from its publication without authority of the author. *Wheaton* v. *Peters,* 8 Pet. 591, 659.

In Drone on Copyright that author says, page 100:

"As the law is now expounded, there are important differ-

ences between the statutory and the common-law right. The former exists only in works which have been published within the meaning of the statute, and the latter only in works which have not been so published. In the former case ownership is limited to a term of years; in the latter it is perpetual. The rights do not coëxist in the same composition; when the statutory right begins the common-law right ends. Both may be defeated by publication. Thus, when a work is published in print, the owner's common-law rights are lost, and, unless the publication be in accordance with the requirements of the statute, the statutory right is not secured."

While the nature of the property and the protection intended to be given the inventor or author as the reward of genius or intellect in the production of his book or work of art is to be considered in construing the act of Congress, it is evident that to secure the author the right to multiply copies of his work may be said to have been the main purpose of the copyright statutes. Speaking for this court in *Stephens* v. *Cady,* 14 How. 528, 530, Mr. Justice Curtis said:

"The copyright is an exclusive right to the multiplication of the copies, for the benefit of the author or his assigns, disconnected from the plate, or any other physical existence. It is an incorporeal right to print and publish the map, or, as said by Lord Mansfield in *Miller* v. *Taylor,* 4 Burr, 2396, 'a property in notion, and has no corporeal, tangible substance.' "

This fact is emphasized when we note the title to the act of Congress, passed at its first session—"An act for the encouragement of learning, by securing the copies of maps, charts, and books, to the authors and proprietors of such copies, during the times therein mentioned." 1 Stat. at Large, by Peters, chap. 15, p. 124.

In order to secure this right it was provided in that statute, as it has been in subsequent ones, that the authors of books, their executors, administrators, or assigns, shall have the "sole right and liberty of printing, reprinting, publishing, and vending" such book for a term of years, upon complying with the

statutory conditions set forth in the act as essential to the
acquiring of a valid copyright. Each and all of these statu-
tory rights should be given such protection as the act of Con-
gress requires, in order to secure the rights conferred upon
authors and others entitled to the benefit of the act. Let us
see more specifically what are the statutory rights, in this be-
half, secured to one who has complied with the provisions of
the law and become the owner of a copyright. They may be
found in §§ 4952, 4965 and 4970 of the Revised Statutes of the
United States, and are as follows:

"SEC. 4952. Any citizen of the United States or resident
therein, who shall be the author, inventor, designer or proprie-
tor of any book, map, chart, dramatic or musical composition,
engraving, cut, print or photograph or negative thereof, or of
a painting, drawing, chromo, statue, statuary, and of models
or designs intended to be perfected as works of the fine arts,
and the executors, administrators or assigns of any such per-
son, shall, upon complying with the provisions of this chap-
ter, have the sole liberty of printing, reprinting, publishing,
completing, copying, executing, finishing and vending the
same." U. S. Comp. St. 1901, p. 3406.

"SEC. 4965. If any person, after the recording of the title
of any map, chart, musical composition, print, cut, engraving,
or photograph or chromo, or of the description of any painting,
drawing, statue, statuary, or model or design intended to be
perfected and executed as a work of fine arts, as provided by
this chapter, shall within the term limited, and without the
consent of the proprietor of the copyright first obtained in
writing, signed in presence of two or more witnesses, engrave,
etch, work, copy, print, publish, or import, either in whole or
in part, or by varying the main design with intent to evade
the law, or knowing the same to be so printed, published, or
imported, shall sell or expose to sale any copy of such map
or other article, as aforesaid, he shall forfeit to the proprietor
all the plates on which the same shall be copied, and every
sheet thereof, either copied or printed, and shall further for-

feit one dollar for every sheet of the same found in his posses-
sion, either printing, printed, copied, published, imported, or
exposed for sale; and in case of a painting, statue, or statuary,
he shall forfeit ten dollars for every copy of the same .in his
possession, or by him sold or exposed for sale, one-half thereof
to the proprietor and the other half to the use of the United
States." U. S. Comp. St. 1901, p. 3414.

Section 4970 is as follows:

"The Circuit Courts, and District Courts having the juris-
diction of Circuit Courts, shall have power, upon bill in equity
filed by any party aggrieved, to grant injunctions to prevent
the violation of any right secured by the laws respecting copy-
rights, according to the course and principles of courts of equity,
on such terms as the court may deem reasonable." U. S. Comp.
St. 1901, p. 3416.

Section 4965 undertakes to work a forfeiture of copyrighted
articles, and confers a right of action for a penalty. Relief is
given in a single suit, one-half of the money recovered going
to the United States. *Werckmeister* v. *American Tobacco Com-
pany,* 207 U. S. 375.

As this is a suit in equity for relief under § 4970 of the U. S.
Revised Statutes, giving to the Circuit and District Courts of
the United States the right to grant relief by injunctions to pre-
vent the violations of rights secured by the copyright statutes,
we are not concerned with rights and remedies under § 4965.

It is the contention of the appellant that the Circuit Court
erred in failing to give effect to the provision of § 4952, pro-
tecting the owners of the copyright in the sole right of vending
the copyrighted book or other article, and the argument is
that the statute vested the whole field of the right of exclusive
sale in the copyright owner; that he can part with it to another
to the extent that he sees fit, and may withhold to himself, by
proper reservations, so much of the right as he pleases.

What does the statute mean in granting "the sole right of
vending the same"? Was it intended to create a right which
would permit the holder of the copyright to fasten, by notice

in a book or upon one of the articles mentioned within the statute, a restriction upon the subsequent alienation of the subject-matter of copyright after the owner had parted with the title to one who had acquired full dominion over it and had given a satisfactory price for it? It is not denied that one who has sold a copyrighted article, without restriction, has parted with all right to control the sale of it. The purchaser of a book, once sold by authority of the owner of the copyright, may sell it again, although he could not publish a new edition of it.

In this case the stipulated facts show that the books sold by the appellant were sold at wholesale, and purchased by those who made no agreement as to the control of future sales of the book, and took upon themselves no obligation to enforce the notice printed in the book, undertaking to restrict retail sales to a price of one dollar per copy.

The precise question, therefore, in this case is, does the sole right to vend (named in § 4952) secure to the owner of the copyright the right, after a sale of the book to a purchaser, to restrict future sales of the book at retail, to the right to sell it at a certain price per copy, because of a notice in the book that a sale at a different price will be treated as an infringement, which notice has been brought home to one undertaking to sell for less than the named sum? We do not think the statute can be given such a construction, and it is to be remembered that this is purely a question of statutory construction. There is no claim in this case of contract limitation, nor license agreement controlling the subsequent sales of the book.

In our view the copyright statutes, while protecting the owner of the copyright in his right to multiply and sell his production, do not create the right to impose, by notice, such as is disclosed in this case, a limitation at which the book shall be sold at retail by future purchasers, with whom there is no privity of contract. This conclusion is reached in view of the language of the statute, read in the light of its main purpose

to secure the right of multiplying copies of the work, a right which is the special creation of the statute. True, the statute also secures, to make this right of multiplication effectual, the sole right to vend copies of the book, the production of the author's thought and conception. The owner of the copyright in this case did sell copies of the book in quantities and at a price satisfactory to it. It has exercised the right to vend. What the complainant contends for embraces not only the right to sell the copies, but to qualify the title of a future purchaser by the reservation of the right to have the remedies of the statute against an infringer because of the printed notice of its purpose so to do unless the purchaser sells at a price fixed in the notice. To add to the right of exclusive sale the authority to control all future retail sales, by a notice that such sales must be made at a fixed sum, would give a right not included in the terms of the statute, and, in our view, extend its operation, by construction, beyond its meaning, when interpreted with a view to ascertaining the legislative intent in its enactment.

This conclusion renders it unnecessary to discuss other questions noticed in the opinion in the Circuit Court of Appeals, or to examine into the validity of the publisher's agreements, alleged to be in violation of the acts to restrain combinations creating a monopoly or directly tending to the restraint of trade.

The decree of the Circuit Court of Appeals is

*Affirmed.*