**SCANDIA HOUSE ENTERPRISES, INCORPORATED, Plaintiff,**

v.

**DAM THINGS ESTABLISHMENT, Defendant.**

**Civ. A. No. 2670-64.**

United States District Court
District of Columbia.
July 15, 1965.

William E. Schuyler, Jr., Richard G. Kline, Browne, Schuyler & Beveridge, Washington, D. C., for plaintiff.

Nelson H. Shapiro, Shapiro & Shapiro, Washington, D. C., Robert H. Rines, Rines & Rines, Boston, Mass., Richard S. Banick, Miami, Fla., for defendant.

JACKSON, District Judge.

This cause came on for trial March 12, 1965, and March 15, 1965. The Court, having reviewed the Record and Exhibits, together with the Briefs of the parties, has found for the plaintiff, and against the defendant, and states its Findings of Fact and Conclusions of Law separately as follows:

### FINDINGS OF FACT

1. Plaintiff brought its Complaint pursuant to 28 U.S.C. § 2201 and § 2202 for declaratory judgment that defendant's design patent No. 190,918 is not infringed by Dolls sold by plaintiff and that said design patent No. 190,918 is invalid.

This Court has jurisdiction of the suit against the foreign defendant pursuant to 35 U.S.C. § 293 and 28 U.S.C. § 1338.

Defendant answered and counterclaimed for (1) Infringement of Design Patent 190,918; (2) Unfair Competition; and (3) Copyright Infringement.

Issue was joined on all counts. By agreement of the parties, however, trial was limited to the count of copyright infringement.

2. In September 1962 plaintiff and defendant entered into an exclusive agreement giving plaintiff the exclusive option on all products sold by defendant in the United States. Until June 1, 1964, plaintiff and defendant operated under this agreement, first by plaintiff importing from Denmark Troll Dolls, and then by plaintiff purchasing from defendant's agent, American Troll Distributors, Dolls made by defendant's licensee, Royalty Designs, Inc., in Miami. On June 1, 1964, defendant, without notice, refused to sell or deliver any more Troll Dolls to plaintiff.

3. Prior to 1961, Thomas Dam (dba Dam Familieforetagende) made rubber Dolls in Denmark and exported them to plaintiff in the United States. About February 1961 Thomas Dam began manufacturing P.V.C. (polyvinyl chloride) Dolls having the same form as rubber Dolls and a shipment of ninety 8″ P.V.C. Troll Dolls were sold by Thomas Dam to plaintiff in April 1961. During 1961 and 1962 plaintiff imported from Thomas Dam directly and through Dam's agent, Expodana, about 25,000 large 8″ Troll Dolls, about 50,000 medium 5″ Troll Dolls, and about 50,000 miniature Troll Dolls.

4. In January 1963 defendant licensed Royalty Designs, Inc., to manufacture Troll Dolls identical with the Troll Dolls previously imported. The entire output of Royalty Designs, Inc., was purchased by defendant's fiduciary agent American Troll Distributors who, acting on behalf of defendant, sold those Troll Dolls to plaintiff. During 1963 and until June 1964 American Troll Distributors sold to plaintiff about 50,000 large 8″ Troll Dolls, about 200,000 medium 5″ Troll Dolls, and between 2,000,000 and 3,000,000 miniature 2½″ Troll Dolls. After June 1964 American Troll Distributors sold the Dolls manufactured by Royalty Designs, Inc. to Dam Things Originals, a name defendant now uses for marketing Dolls in the United States.

5. About January 1964 defendant licensed Uneeda Doll Company to manufacture Troll Dolls and informed plaintiff by letter that anybody could copy all sizes of the Troll Dolls at any time, but a license was issued to Uneeda instead of letting Uneeda know this.

6. Defendant's counterclaim for copyright infringement was filed November 16, 1964. On November 23, 1964, an application was filed for Certificate of Registration of Claim to Copyright for a Boy Troll, and on December 7, 1964, defendant filed an application for Certificate of Registration of Claim to Copyright for a Girl Troll. Two Troll Dolls were deposited in the Copyright Office which were manufactured by Royalty Designs, Inc., in 1964, with a notation molded into the left foot of each Doll reading:

© 
1961 
190918 
Denmark

7. These first applications identified the copyright claimant as "Dam Things Establishment (sometimes D/B/A Dam Things, Dam Things Originals, Dam and Denmark) of Vaduz, Liechtenstein"; identified the nature of the work as a "sculpture"; named the author as "Dam Things Establishment, principality of Liechtenstein"; specified the date of first publication as "February 1, 1964", and named the place of first publication as the "United States". The Copyright Office refused to issue certificates because the copyright notice carried the name "Denmark", which could only be identified as the country and not the name of the copyright proprietor. New applications were then filed January 22, 1965 naming the copyright claimant as "Denmark, an accepted alternative designation for Dam Things Establishment, Vaduz, Liechtenstein"; specifying the date of first publication as "November 1, 1961"; and identifying the place of publication as the "Kingdom of Denmark". Telegrams signed by Thomas Dam and the President of Royalty Designs, Inc., asserted to the Copyright Office that in 1961 "Denmark" meant "Dam Things Establishment".

8. Concerning the question of the issuance of a Certificate of Registration of a Claim to Copyright where design patent No. 190,918 had issued to defendant in July 1961, before the Dolls were allegedly published in Denmark, defendant's counsel in a letter asserted that the Dolls deposited in the Copyright Office were made in molds different from the molds of the Doll of the design patent. This was contradicted by a letter from Thomas Dam stating that the forms of the P.V.C. Dolls were the same as that of the rubber Dolls.

9. Dolls like defendant's Dolls appear in "SE OG HOR", a Danish magazine

published in Denmark September 4, 1959, with pictures of Thomas Dam and his daughter, Lajla. Dolls like defendant's Dolls appear in "Femina", a Danish magazine published September 27, 1960, with pictures of Thomas Dam and his daughter. Advertisement showing pictures of defendant's Dolls appear in "Familie Journal", a Danish magazine published in Denmark November 29, 1960.

10. None of the Dolls made in Denmark and sold to plaintiff have a copyright notice on the Dolls, or a copyright notice on any tag attached to the Dolls, or a copyright notice on any package for the Dolls. Of the 50,000 large 8″ Troll Dolls made by Royalty Designs, Inc., and sold by defendant to plaintiff, a few had a copyright notice in the foot of the Doll. Tags attached to the Dolls have the word "patented", but not a copyright notice. None had a copyright notice on a package for the Dolls. Of the 200,000 5″ Dolls made by Royalty Designs, Inc., and sold by defendant to plaintiff, none had a copyright notice on the Doll, none had a copyright notice on a tag attached to the Doll, and none had a copyright notice on a package for the Doll. Of the over 2,000,000 miniature 2½″ Trolls manufactured by Royalty Designs, Inc., and sold by defendant to plaintiff, none had a copyright notice on the Doll, none had a copyright notice on a tag attached to the Doll, and none had a copyright notice on a package for the Dolls.

11. After June 1, 1964, some Dolls sold by defendant had tags secured by a string bearing the word "Copyrighted", but the name of defendant was not on the tags. Beginning thirty to sixty days before trial, some medium size (5″) Dolls sold by defendant had a paper label secured by adhesive on the foot bearing a notation "Copyright 1964–1965". In a bag of twelve miniature 2½″ Dolls sold by defendant after June 1964, a copyright notice was molded in the foot of two of the Dolls reading "Copyright—1964".

12. "Denmark" appearing on defendant's Troll Dolls is an indication of the country of origin in compliance with the Tariff Act. It is not the name of defendant and does not identify defendant as the proprietor of any copyright.

13. The license agreement from defendant to Royalty Designs, Inc., is stated to be a written agreement, but the written agreement was not produced at trial and parol testimony concerning alleged instructions to Royalty Designs concerning putting notice on the Dolls is vague and contradictory; there is insufficient evidence to support defendant's contention that placing a copyright notice on the Dolls was a condition of the license agreement between defendant and Royalty Designs, Inc.

14. Defendant and the President of Royalty Designs, Inc. had numerous discussions concerning the absence of a copyright notice, but no remedial action was taken until 30 to 60 days before trial.

15. In its Brief After Trial, defendant asked the Court to take judicial notice that the word "Beskyttet" (appearing on labels of imported Dolls) means "Copyright". According to accepted Danish-English Dictionaries, however, the Danish word "Beskyttet" means "Protected", not "Copyright".

16. There is no evidence of significant differences between defendant's Dolls deposited in the Copyright Office and Dolls appearing in two Danish magazines; there is no evidence of significant differences between defendant's Dolls deposited in the Copyright Office and the first P. V.C. Dolls sold to plaintiff in April 1961; there is no evidence of significant differences between defendant's Dolls deposited in the Copyright Office and Dolls made in Denmark by Thomas Dam and sold to plaintiff during 1961 and 1962; there is no evidence of significant differences between defendant's Dolls deposited in the Copyright Office and Dolls made in the U.S.A. by Royalty Designs, Inc., without copyright notice and sold by defendant to plaintiff during 1963 and until June 1964; and there is no evidence that such differences as may exist between defendant's Dolls deposited in the Copyright Office and Dolls in the public domain have been copied by plaintiff.

17. By letter dated January 26, 1964, defendant informed plaintiff that "UNEEDA can copy the troll anytime it likes. All sizes. The law says so. So can anybody else. UNEEDA doesn't know this. When UNEEDA does know this so will everybody else. We gave UNEEDA a license instead of letting them know this."

18. All Dolls sold to plaintiff by Dam Familiefortegende, by Expodana, and by American Troll Distributors were sold without restriction as to purpose and without limitation as to plaintiff's right of redistribution and/or resale. The only evidence of any instructions given to defendant's licensees concerning use of copyright notice was that given to Royalty Designs, Inc., that given Uneeda, Goldberg and Goldfarb, that given Robert Smith, and that given defendant's witness Hart.

19. Dolls were sold to plaintiff as a purchaser for purpose of resale, not as a publisher for the purpose of reproducing the Dolls for sale.

20. All Dolls sold to plaintiff by Dam Familiefortegende and Expodana prior to 1962 were sold to plaintiff as a member of the general public and not on any exclusive basis. Subsequent to January 1964, the arrangement between plaintiff and defendant was not on an exclusive basis, because defendant then licensed Uneeda, and also licensed Goldberg and Goldfarb.

### CONCLUSIONS OF LAW

■ I. All Dolls sold or publicly distributed by defendant without copyright notice are in the public domain, including Dolls made in Denmark by Thomas Dam and sold to plaintiff during 1961 and 1962, and Dolls made by Royalty Designs, Inc., and sold by defendant to plaintiff. Bobbs-Merrill Co. v. Straus, 210 U.S. 339, 28 S.Ct. 722, 52 L.Ed. 1086 (1908); Public Affairs Associates, Inc. v. Rickover, 109 U.S.App.D.C. 128, 284 F.2d 262 (1960).

■ II. All Dolls made by Royalty Designs, Inc., without copyright notice and sold to American Troll Distributors,

defendant's fiduciary agent, who acting on behalf of defendant, sold them to plaintiff, were sales by defendant's agent and, therefore, sales by defendant itself.

■ III. When the evidence shows that thousands of large 8″ Troll Dolls were sold by defendant without notice and only a few had a copyright notice, and thousands of medium 5″ Troll Dolls were sold by defendant none of which had a copyright notice, and millions of miniature Troll Dolls were sold by defendant none of which had a copyright notice, defendant cannot properly contend that manufacture of Dolls by Royalty Designs, Inc., without notice was an unauthorized act, a mistake, or a breach of a condition of a license agreement, particularly where defendant was aware of the manufacture of Dolls without notice and he did not take remedial action until 60 days before trial. National Comics Publications v. Fawcett Publications, 191 F.2d 594 (2 Cir. 1951).

■ IV. Sale of Dolls by defendant without notice places the Dolls in the public domain from which they cannot be withdrawn by a contention that the omission of the notice was accident or mistake, particularly where the notice was omitted from almost all the Dolls ever manufactured. (17 U.S.C. § 21) National Comics Publications v. Fawcett Publications, 191 F.2d 594 (2 Cir. 1951).

■ V. Defendant, by manufacturing some Dolls in 1964 with a copyright notice dated 1961, and by depositing those Dolls in the Copyright Office to obtain a Certificate of Registration of a Claim to Copyright, cannot withdraw from the public domain identical Dolls sold in huge quantities by defendant itself and earlier by Thomas Dam, now a principal of defendant. No copyright can subsist in Dolls in the public domain (17 U.S.C. § 8).

■■ VI. Notice on the two Dolls deposited by defendant in the Copyright Office is inadequate because the word "Denmark" appearing on those Dolls is not the name of defendant, but identi-

fies the country of origin usually placed on imported merchandise to conform to the requirements of the Tariff Act. Defendant has no copyright in the Dolls deposited in the Copyright Office because the notice does not name the defendant. Certificates of Registration of Claims to Copyright Nos. GP45998 and GP45999 are invalid, void, and of no effect. E. I. Horsman & Aetna Doll Co., Inc. v. Kaufman, 286 F. 372 (2 Cir. 1922), cert. den. 261 U.S. 615, 43 S.Ct. 361, 67 L.Ed. 828.

VII. There being no apparent difference, and no evidence of any difference between Dolls defendant deposited in the Copyright Office and Dolls in the public domain, defendant cannot claim any copyright in the Dolls deposited in the Copyright Office and the Certificates of Registration of Claims to Copyright Nos. GP45998 and GP45999 are invalid, void, and of no effect. (17 U.S.C. § 7).

VIII. By failing to establish that plaintiff copied any new matter in defendant's Dolls deposited in the Copyright Office, defendant failed to prove infringement of any copyright it may have in those Dolls which is not in the public domain and plaintiff is entitled to judgment of noninfringement. Costello v. Lowes, Incorporated, 159 F.Supp. 782 (DC–DC–1958).

IX. A publisher is one who reproduces material for sale, Hirshon v. United Artists Corporation, 100 U.S.App. D.C. 217, 243 F.2d 640 (1957) not one who purchases material for resale. Sale of Dolls without copyright notice to plaintiff by Dam Familiefortegende, by Expodana, and by American Troll Distributors was publication of the Dolls without copyright notice because those Dolls were sold to plaintiff without restriction as to the purpose of the sale and without limitation on plaintiff's right of distribution or resale, wherefore defendant cannot properly contend that the sale to plaintiff was a limited publication or that plaintiff is a publisher. White v. Kimmell, 193 F.2d 744 (9 Cir. 1952) (cert. den. 343 U.S. 957, 72 S.Ct. 1052, 96 L.Ed. 1357).