**WALT DISNEY PRODUCTIONS,**
Plaintiff,

v.

**UNITED STATES of America,**
Defendant.

No. 70–1296–R.

United States District Court,
C. D. California.

May 17, 1971.

Leon S. Angvire, Hill, Farrer & Burrill, Los Angeles, Cal., John Cooley Baity, Donovan, Leisure, Newton & Irvine, New York City, for plaintiff.

Robert L. Meyer, U. S. Atty., Charles H. Magnuson, Mason C. Lewis, Asst. U. S. Attys., Los Angeles, Cal., for defendant.

## MEMORANDUM OPINION

REAL, District Judge.

Plaintiff, Walt Disney Productions, brings this action for the recovery of federal income taxes paid as the result of the disallowance of claimed investment credit for negatives used by plaintiff as a producer of films for exhibition in theaters, on television and other non-theatrical entertainment. The theatrical films are entitled BIG RED and BON VOYAGE. Films prepared and marketed for television are CARNIVAL TIME, THE PRINCE AND THE PAUPER, VON DRAKE IN SPAIN, DISNEYLAND AFTER DARK, THE GOLDEN HORSEHOE REVUE and ESCAPADE IN FLORENCE.

Plaintiff, Walt Disney Productions, is a California corporation organized in 1938 to succeed to the business theretofore being operated by the late Walt Disney and his brother Roy O. Disney in three predecessor corporations. Plaintiff's principal business activities since its organization has been in the production and distribution of motion picture films and the operation of an amusement park known as Disneyland in Anaheim, California. Business policy has largely limited the plaintiff to activities which are oriented to family entertainment, i. e., having appeal to adults as well as children.

It is the operation of the motion picture production facilities of plaintiff that brings before a court for the first time the applicability of the investment credit provisions of the Revenue Act of 1962 to motion picture film negatives. Production of a motion picture is an involved process of gathering together of story material, talent and production expertise and facilities to turn out a motion picture film negative. The motion picture film negative is then used to make positive prints rented to exhibitors for viewing by the public. It is the cost of creating the motion picture film negatives for the fiscal year ending September 29, 1962 in the sum of $1,416,573 that plaintiff claims is subject to the investment credit allowance. Plaintiff is properly before the court after having made claim for refund and denial of the claim by the Internal Revenue Service.

The parties have by stipulation confined the issues to be determined by the court:

A. The factual question of whether each of the motion picture negatives which are the subject of this action had an estimated useful life of eight years or more when placed in service; and

B. The legal question of whether the motion picture negatives constitute tangible personal property.

## 1. THE USEFUL LIFE ISSUE:

■ The evidence amply supports a finding that each of the motion picture films herein had at the time of being placed in service a useful life of eight years and that plaintiff in good faith made such an estimate.

Plaintiff is engaged in the business of producing family entertainment. As such the film productions of plaintiff, unlike many other production companies, are not so-called "dated material", i. e., subject matter with an interest span limited by its content.

Experience of plaintiff with its productions prior to 1962 showed that most of plaintiff's films had an earning capacity in excess of eight years and, in fact, many had been reissued for theater showing and television exhibitions. That plaintiff was planning ahead is evidenced by the fact that films produced for showing on television in the black and white era of that medium were made

in color in anticipation of color television reception now an accomplished fact.

 Defendant points to the depreciation method of income forecast permitted by the Internal Revenue Code as binding upon plaintiff. Depreciation and its use as a "tax shelter" has a sufficient history to make one thing clear—that depreciation—as permitted by the tax laws—really has no true relationship to the life of the item depreciated—either useful or otherwise. To apply depreciation method as a binding determination of "estimated useful life" required by the investment credit provisions of the Internal Revenue Code without specific limitation by the legislature is unrealistic and this Court declines the invitation to so legislate.

Defendant is not prejudiced by such a ruling since it is entitled to recapture of investment credits in the event plaintiff's useful life estimates prove to be erroneous. 26 U.S.C. § 47.

## 2. TANGIBLE PERSONAL PROPERTY ISSUE:

Title 26, United States Code, section 48 defines the property subject to investment credit. In pertinent part it provides:

"§ 48. Definitions; Special rules

(a) Section 38 property.—

(1) In general.—Except as provided in this subsection, the term 'section 38 property' means—

(A) tangible personal property, or

(B) * * *

(C) * * *

Such term includes only property with respect to which depreciation (or amortization in lieu of depreciation) is allowable and having a useful life (determined as of the time such property is placed in service) of 4 years or more."

The Congress in its enactment of the investment credit did not go beyond defining eligible property as "tangible". Pursuant to the authority granted to the Secretary of the Treasury in Title 26, United States Code, section 38(b) to prescribe "such regulations as may be necessary to carry out the purposes of this section and subpart B", Treasury Regulations 1.48–1(c) provides for the definition of tangible personal property in essentially these terms:

"* * * [F]or the purposes of this section, the term 'tangible personal property' means any tangible property except land and improvements thereto such as buildings or other inherently permanent structures (including items which are structural components of such building or structures). * * *"

To distinguish eligible tangible personal property, Treasury Regulations 1.48–1(f) defines intangible property as follows:

"(f) Intangible property. Intangible property, such as patents, copyrights, and subscription lists does not qualify as section 38 property * * *"

Defendant then urges the following language of Treasury Regulation 1.48–1(f) as binding upon this Court in its consideration of the motion picture film negatives. Subsection (f) continues:

"* * * The cost of intangible property, in the case of a patent or copyright, includes all costs of purchasing or producing *the item* patented or copyrighted. Thus, in the case of a motion picture or television film or tape, the cost of the intangible property includes manuscript and screenplay costs, the cost of wardrobe and set design, the salaries of cameramen, actors, directors, etc., and all other costs properly includible in the basis of such film or tape. In the case of a book * * *"

 Defendant in urging upon the Court the binding effect of the above-quoted language misconstrues the function of the Secretary of the Treasury in two important respects: (1) The Congress gave the Secretary the power to promulgate regulations "to carry out the purposes of the Act", not to define

or redefine eligible property, and (2) the determination of what is or what is not "tangible personal property", within the meaning of the investment credit provisions of the Internal Revenue Code, is for the Court, not the Secretary of the Treasury.[1] Within its constitutional powers, the Congress could have limited the definition of "tangible personal property" for tax purposes. It did not do so. Our only alternative is to assume the Congress intended the application of the ordinary meaning of tangibility. The Secretary has no power to create a new substantive definition omitted by the legislature.

█ The motion picture negatives here certainly are tangible—weighing between 27 and 51 pounds, between 5000 and 11,800 feet in length and capable of being seen and touched.[2] The negatives are physically used in the manufacture of prints which are plaintiff's stock in trade to its consumers. It is this use which establishes the eligibility as "tangible personal property".

█ Regulation 1.48–1(f) suffers from yet another infirmity. When the Secretary includes in cost of copyright or patents, the "costs of purchasing or producing the item patented or copyrighted," he misconstrues the very nature of patents and copyrights.

██ A copyright, when secured in accordance with applicable laws is the *right* to multiply copies of a literary, intellectual or artistic property.[3] Nowhere in the constitutional or statutory scheme does the law create a right by copyright *in the property*. It is an incorporeal (intangible) right existing independently from the corporeal (tangible) property out of which it arises. Bobbs-Merrill Co. v. Straus, 210 U.S. 339, 28 S.Ct. 722, 52 L.Ed. 1086 (1907); Stephens v. Cady, 14 How. 528, 14 L.Ed. 528 (1852).

Certainly that right has value—often exceeding the intrinsic value of the tangible property copyrighted. That copyright is a separate property right treated *differently for accounting purposes* than the copyrighted property is recognized by the Internal Revenue Code, 26 U.S.C. § 861(a) (4); 26 U.S.C. § 1221 (3). To accept defendant's interpretation of copyright property would exclude "tangible personal property" where the owner of the property in order to guarantee to himself the exclusive right to reproduce the "tangible personal property" obtains a patent or copyright. The fallacy of the major premise is obvious.

Defendant further argues that Regulation 1.48–1(f) can be read to apply only to "prototypes", i. e., the creation of a sample of the work to determine its workability. Without deciding the applicability to copyrighted and patented articles the use of that principle here cannot withstand careful scrutiny. We are not here concerned with a prototype—experimental film. The motion picture negatives which concern us are the vehicle for creation of plaintiff's stock in trade—it is *a tool* together with the reproduction processes *which allows* plaintiff to produce its inventory. Without *this* negative no positive print would be available to plaintiff to carry out its everyday business.

Plaintiff's motion picture negatives are entitled to treatment as tangible personal property for the purposes of the investment credit permitted by 26 U.S. C. § 38 et seq.

### 3. ALLOWABLE COSTS:

█ Although not briefed to the Court, there is a question of allowable costs for creation of the motion picture negatives. It is the view of the Court that costs allowable for computing the investment credit are only those costs

---

1. See Barlow v. Collins, 397 U.S. 159, 166, 90 S.Ct. 832, 25 L.Ed.2d 192, 199.

2. Tangible—la : capable of being touched : able to be perceived as materially existent esp. by the sense of touch. Webster's Third New International Dictionary (unabridged).

3. Title 17, United States Code, Section 1 et seq.

which are directly related to the finished negative. To arrive at such allocable costs, the Court finds that those costs which are not affected by the footage shot, i. e., talent on a per picture basis, costs for scenery which must be expended whether the finished product is 5000 or 6000 feet of negative, etc. Therefore, such costs as may involve hourly labor—grips, extras, etc.—shall be allowed only in relationship the final footage of negative to be used for production of positive prints bears to the total footage shot. This arises primarily from the concern of the Court that to rule otherwise would reward inefficiency in motion picture production and certainly the cut negative cannot meet the "life span" requirements established by Congress. None of the rejected footage would qualify.

Judgment shall be for plaintiff. Final recovery to abide the parties agreeing to "allocable costs" as provided herein. Plaintiff to prepare findings of fact, conclusions of law and final judgment consistent with this opinion within 45 days.