J. GARVAN MURTHA, District Judge,
dissenting:
As noted by the majority, the application of the first sale doctrine when a copy is manufactured outside the United States is an issue of first impression in this Circuit. The Supreme Court has recently considered the issue but unfortunately provided no specific guidance. See Costco Wholesale Corp. v. Omega, S.A., — U.S. --, *225 131 S.Ct. 565, 178 L.Ed.2d 470 (2010), affg by an equally divided court 541 F.3d 982 (9th Cir.2008) (holding the first sale doctrine does not apply to foreign manufactured copies unless previously imported and sold with the copyright holder’s authorization). Unlike the majority, I conclude the first sale defense should apply to a copy of a work that enjoys United States copyright protection wherever manufactured. Accordingly, I respectfully dissent.
The Copyright Act sections that are pertinent to this appeal — 17 U.S.C. §§ 106(3), 109(a), and 602(a)(1) — are set out in the opinion of the majority. The distribution right of § 106(3) primarily protects a copyright owner’s ability to control the terms on which her work enters the market. The first sale doctrine of § 109(a) limits the scope of this distribution right. Finally, § 602(a)(1) addresses the extent to which the distribution right allows a copyright owner to also control importation of copies of her work.
The Supreme Court has held a copyright owner’s § 602(a) right to control the importation of copies of her work is derivative of § 106(3)’s distribution right, which is subject to the first sale doctrine. Quality King Distrib., Inc. v. L’anza Research Int., Inc., 523 U.S. 135, 149, 118 S.Ct. 1125, 140 L.Ed.2d 254 (1998). The Court noted “the text of § 602(a) itself unambiguously states that the prohibited importation is an infringement of the exclusive distribution right ‘under section 106, actionable under section 501.’ ” Id. Because the rights granted in § 106(3) are “subject to sections 107 through 122,” the copyright owner’s power to limit importation is qualified by the first sale doctrine of § 109(a). Id. at 144, 118 S.Ct. 1125.
The issue is whether this holding can be extended to copies manufactured outside the United States. The Quality King Court held the first sale doctrine applies to imported copies that were made in the United States. Here, the district court held — and the majority affirms — the doctrine does not apply to imported copies that were made abroad because § 109(a) applies only to copies that are “lawfully made under this title,” and that means physically manufactured in the. United States. See John Wiley & Sons, Inc. v. Kirtsaeng, No. 08 Civ 7834, 2009 WL 3364037, at *9 (S.D.N.Y. Oct. 19, 2009). The court’s decision is based on the following dicta in Quality King:
Even in the absence of a market allocation agreement between, for example, a publisher of the United States edition and a publisher of the British edition of the same work, each such publisher could make lawful copies. If the author of the work gave the exclusive United States distribution rights-enforceable under the Act-to the publisher of the United States edition and the exclusive British distribution rights to the publisher of the British edition, however, presumably only those made by the publisher of the United States edition would be ‘lawfully made under this title’ within the meaning of § 109(a). The first sale doctrine would not provide the publisher of the British edition who decided to sell in the American market with a defense to an action under § 602(a)....
523 U.S. at 148, 118 S.Ct. 1125 (footnote omitted).
I respectfully disagree with the court’s analysis. To apply, § 109(a) requires (1) the person claiming protection be the owner of the copy, and (2) the copy was “lawfully made under this title.” 17 U.S.C. § 109(a). Courts have split over the meaning of “lawfully made under this title,” with some holding it means “legally manufactured ... within the United States,” CBS v. Scorpio Music Distrib., 569 F.Supp. 47, 49 (E.D.Pa.1983), affd *226 without opinion, 738 F.2d 424 (3d Cir. 1984); see also Omega S.A. v. Costco Wholesale Corp., 541 F.3d 982, 987 (9th Cir.2008), affd by an equally divided court — U.S. -, 131 S.Ct. 565, 178 L.Ed.2d 470 (2010), and others “confessing] some uneasiness with this construction” and suggesting “lawfully made under this title” refers not to the place a copy is manufactured but to the lawfulness of its manufacture as a function of U.S. copyright law. Sebastian Int’l, Inc. v. Consumer Contacts (PTY) Ltd., 847 F.2d 1093, 1098 n. 1 (3rd Cir.1988).
The statutory text does not refer to a place of manufacture: It focuses on whether a particular copy was manufactured lawfully under title 17 of the United States Code. 17 U.S.C. § 109(a). The United States law of copyrights is contained in title 17. Accordingly, the lawfulness of the manufacture of a particular copy should be judged by U.S. copyright law. Pearson Educ. v. Liu, 656 F.Supp.2d 407, 412 (S.D.N.Y.2009) (John Wiley & Sons, Inc. was a plaintiff in this action as well). A U.S. copyright owner may make her own copies or authorize another to do so. 17 U.S.C. § 106(1). Thus, regardless of place of manufacture, a copy authorized by the U.S. rightsholder is lawful under U.S. copyright law. Here, Wiley, the U.S. copyright holder, authorized its subsidiary to manufacture the copies abroad, which were purchased and then imported into the United States.
This interpretation of “lawfully made” is supported by the language of the Copyright Act as a whole. For example, Congress used the phrase “under this title” in multiple sections of the Act to describe the scope of rights created by the Act. See, e.g., 17 U.S.C. § 104(a) (providing certain works, “while unpublished, are subject to protection under this title without regard to the nationality or domicile of the author”); id. § 105 (providing “copyright protection under this title is not available for any work” of the U.S. government); id. § 106 (providing “the owner of copyright under this title has the exclusive rights to.... ”). However, “[w]hen Congress considered the place of manufacture to be important, ... the statutory language clearly expresses that concern.” Sebastian, 847 F.2d at 1098 n. 1. For example, § 601(a), the “manufacturing requirement,” provides:
Prior to July 1, 1986, and except as provided by subsection (b), the importation into or public distribution in the United States of copies of a work, consisting preponderantly of nondramatic literary material that is in the English language and is protected under this title is prohibited unless the portions consisting of such material have been manufactured in the United States or Canada.
17 U.S.C. § 601(a)(1) (emphasis added). Also, as the majority points out, § 104(b)(2) provides “[t]he works specified by sections 102 and 103, when published, are subject to protection under this title if the work is first published in the United States or in a foreign nation....” 17 U.S.C. § 104(b)(2) (emphasis added). If Congress intended § 109(a) to apply only to copies manufactured in the United States, it could have stated “lawfully manufactured in the United States under this title.” As Congress did not include “manufactured in the United States” in § 109(a), though it was clearly capable of doing so as demonstrated by § 601(a), the omission supports the conclusion that Congress did not intend the language “lawfully manufactured under this title” to limit application of § 109(a) to only copies manu *227 factured in the United States.[1]
As noted in the majority opinion, supra note 14, the first sale doctrine originated in Bobbs-Merrill Co. v. Straus, 210 U.S. 339, 28 S.Ct. 722, 52 L.Ed. 1086 (1908). There the Supreme Court held defendant-retailer’s sales of a copyrighted book for less than the price noted on the copyright page was not a copyright violation. Id. at 341, 28 S.Ct. 722. “The purchaser of a book, once sold by authority of the owner of the copyright, may sell it again, although he could not publish a new edition of it.” Bobbs-Merrill, 210 U.S. at 350, 28 S.Ct. 722. Once the copyright holder has controlled the terms on which the work enters the market, i.e., the purpose of the distribution right, “the policy favoring a copyright monopoly for authors gives way to the policy opposing restraints of trade and restraints on alienation.” Pearson, 656 F.Supp.2d at 410 (citation and quotation marks omitted). Accordingly, the Bobbs-MerriU Court held the copyright owner did not have the right to control the terms of subsequent sales. 210 U.S. at 351, 28 S.Ct. 722.
The common law policy against restraints on trade and alienation is not limited by the place of manufacture. Pearson, 656 F.Supp.2d at 413. Under the 1909 (codifying the Bobbs-Merrill holding) and 1947 Copyright Acts, the first sale doctrine applied to “any copy of a copyrighted work the possession of which has been lawfully obtained.” Pub.L. No. 60-349, 35 Stat. 1075, 1084 (1909); Pub.L. No. 80-281, 61 Stat. 652, 660 (1947) (emphasis added). The Supreme Court noted “[tjhere is no reason to assume Congress intended either § 109(a) or the earlier codifications of the doctrine to limit its broad scope.” Quality King, 523 U.S. at 152, 118 S.Ct. 1125. The changed wording in the current version of § 109(a) — “lawfully made under this title” — from the prior versions — “possession of which has been lawfully obtained” — should likewise not be presumed to do so.
Economic justifications also support applicability of the first sale doctrine to foreign made copies. Granting a copyright holder unlimited power to control all commercial activities involving copies of her work would create high transaction costs and lead to uncertainty in the secondary market. An owner first would have to determine the origin of the copy — either domestic or foreign — before she could sell it. If it were foreign made and the first sale doctrine does not apply to such copies, she would need to receive permission from the copyright holder.[2] See 17 U.S.C. § 106(3). Such a result would provide greater copyright protection to copies manufactured abroad than those manufactured domestically: Once a domestic copy has been sold, no matter where the sale *228 occurred, the copyright holder’s right to control its distribution is exhausted. I do not believe Congress intended to provide an incentive for U.S. copyright holders to manufacture copies of their work abroad.
The Ninth Circuit has attempted to circumvent this perpetual right when a copy is made abroad by holding the first sale doctrine can apply to copies made outside the United States but only after there has been one authorized sale here. Denbicare U.S.A. Inc. v. Toys R Us, Inc., 84 F.3d 1143, 1150 (9th Cir.1996). This precedent carried over into the reasoning in Omega S.A., 541 F.3d at 986-90. The Supreme Court, however, provided no guidance as to its views on the Ninth Circuit’s imperfect solution, which is judicially created. This interpretation finds no support in the statutory text and is in direct conflict with the portion of the Supreme Court’s Quality King decision which noted that where a sale occurs is irrelevant for first sale purposes. See 523 U.S. at 145, 118 S.Ct. 1125.
Supporters of limiting the application of the first sale doctrine to domestically manufactured copies rely on the argument that applying the doctrine to foreign made copies would render § 602(a) “virtually meaningless.” (Appellee’s Br. at 15-17.) However, § 602(a) will always apply to copies of a work that have not been sold or are piratical copies. It also applies to copies of a work not lawfully manufactured under title 17 but lawfully manufactured under some other source of law, as in the Quality King dicta, and to copies not in the possession of the “owner,” e.g., a bailee, licensee, consignee or one whose possession of the copy was unlawful. Quality King, 523 U.S. at 147-48, 118 S.Ct. 1125. Further, § 602(a) itself states unauthorized importation is an infringement of the exclusive distribution right of § 106, which as noted above is subject to the first sale doctrine of § 109(a).
Nothing in § 109(a) or the history, purposes, and policies of the first sale doctrine limits it to copies of a work manufactured in the United States. That leaves the question whether the Quality King dicta “sp[eaks] directly to whether the first sale doctrine applies to copies manufactured abroad.” Pearson, 656 F.Supp.2d at 414. That dicta, however, makes no reference to the place of manufacture, Quality King, 523 U.S. at 148, 118 S.Ct. 1125, and therefore does not speak directly to the issue of applicability of the doctrine to foreign made copies.[3] Further, the dicta states the first sale doctrine would not provide a defense to the publisher who sold copies in the American market. Quality King, 523 U.S. at 148, 118 S.Ct. 1125. Of course, because in that situation there has been no first sale unlike here, where the issue is whether the first sale doctrine is available as a defense to the subsequent purchaser.
In Quality King, Justice Ginsburg, in a concurrence joined by no other justice, noted: “I join the Court’s opinion recognizing that we do not today resolve cases in which the allegedly infringing imports were manufactured abroad.” Quality King, 523 U.S. at 154, 118 S.Ct. 1125 (Ginsburg, /., concurring). That issue, however, was squarely before the Supreme Court in Omega and four justices presumably did not agree the Quality King dicta directly addresses it or constitutes the Court’s current view. In light of the above analysis, I agree with the majority *229 that it is a “close call,” supra p. 221, and I would conclude the first sale doctrine applies to foreign manufactured copies.
For the foregoing reasons, I respectfully dissent.

. Congress also demonstrated it could differentiate based on the place a copy was “acquired,” see § 602(a) (applying to copies “acquired outside the United States”), further supporting the conclusion that its omission of a phrase indicating the place of manufacture was not accidental.

. Wiley argues its interpretation of § 109(a) would not lead to perpetual control over imported works because once the U.S. copyright owner imports its copies into the United States, they are lawfully within the United States and, as § 602 applies only to "importations without the authority of the copyright owner,” any further sales would not be covered. Appellee's Br. at 24-25. This argument is not persuasive because the copyright holder seeking to prevent its copies from entering the United States retains exclusive control no matter how many foreign sales may have been made. Wiley’s rule allows it to protect the disparity in its pricing structure despite free market forces. Indeed such a rule, by differentiating based on place of manufacture, would encourage the manufacturing of copies abroad to the detriment of American workers.

. The Amici argue, based on the discussion at oral argument of Quality King, the Court was actually discussing the situation where the copy is made — presumably abroad, but could be domestically- — by someone other than the U.S. copyright holder, for example, a British copyright holder who manufactures under British law. Entm’t Merch. Assoc. Amici Br. at 10-12.