SHELDON P. BARR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Barr v. Commissioner
Docket Nos. 35987-85, 911-86
United States Tax Court
T.C. Memo 1989-69; 1989 Tax Ct. Memo LEXIS 69; 56 T.C.M. (CCH) 1255; T.C.M. (RIA) 89069; February 14, 1989
Sheldon P. Barr, pro se. Robert W. Sadowski, for the respondent. TANNENWALD
MEMORANDUM FINDINGS OF FACT AND OPINION TANNENWALD, Judge: Respondent determined the following deficiencies in petitioner's Federal income taxes: Additions to Tax
Year
Deficiency
Sec. 6651 (a) (1) [1]
Sec. 6659
1980
$ 20,696.81
$ 5,174.20
--
1981
26,666.31
--
$ 5,336.77
*74 Respondent also determined that, under section 6621(d), [2] the deficiency for each year was a substantial underpayment attributable to a tax-motivated transaction so that petitioner is liable for interest at 120 percent of the statutory rate. After concessions by the parties, [3] we must determine whether petitioner was entitled to various deductions and to an investment tax credit with respect to an art publishing activity that he carried on during the years in issue. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts *75 and attached exhibits are incorporated herein by reference. Petitioner resided in Baldwin, New York, at the time that he filed his petition. Petitioner received an extension of time to file his 1980 Federal income tax return to October 15, 1981, and an extension of time to file his 1981 Federal income tax return to October 15, 1982. He and his then wife filed a joint Federal income tax return for 1980 on June 23, 1982, and for 1981 on October 18, 1982, both with the Internal Revenue Service Center, Holtsville, New York. Petitioner received a bachelor of business administration degree with an accounting major from the City College of New York in 1957. In addition, he has a law degree from Brooklyn Law School. As part of his work towards his undergraduate degree, he took basic art classes. Beginning in 1978, and continuing through the years in issue, petitioner was engaged in an art publishing [4] activity, in addition to practicing law. Petitioner had previously purchased artwork for his own collection and studied the art market by attending auctions and galleries after he decided to publish art. He also consulted individuals familiar with the field with respect to legal *76 and financial arrangements common in the art industry. Petitioner solicited artists to publish by advertisements in various publications. As a result, he entered into contracts with three artists. Under the contracts, petitioner engaged the artist to create a number of silkscreen plates that would be used to print an image. [5] The artist transferred title to the plates and all of his copyright in the image to petitioner. [6] In exchange, the artist received a cash downpayment and a nonrecourse, nonnegotiable 10-year promissory note payable solely out of the proceeds of the sales of the prints. Petitioner granted each artist a security interest in the screens and prints to secure payment of the notes. He paid all the cash due to the artists under the contracts; no payments were made on the notes. *77 A limited edition of prints, totalling approximately 300 prints and 60 artist's proofs, [7] was to be made of each image. The prints were signed and numbered by the artist. The specific terms of each contract with respect to each artist are as follows: Number of
Number of
Contract
Number of
Prints
Proofs a
Date
Artist
Plates
(Per plate)
(Per plate)
Cash
8/31/78
Krzyztof
Zarebski
5
350
35
$ 1,500
12/27/79
Pat Hammerman
5
295
59
1,000
12/27/79
Linda
Southworth
5
295
59
1,000
8/15/80
Linda
Southworth
3
350
70
750
Contract
Date
Notes
Total
8/31/78
b $  88,825
$ 90,325
12/27/79
c 73,750
d 74,750
12/27/79
129,060
e 130,060
8/15/80
f 88,125
88,875
*78 In addition, petitioner entered into a contract with Linda Southworth in 1981. Petitioner was unable to locate that contract and its terms are not otherwise in the record. Petitioner planned to market the prints via mail-order sales, in a direct mailing offering either the prints he owned, his prints along with prints owned by other art publishers or his prints and other merchandise. He did not, however, actually carry out any of these direct mail plans. Petitioner did not advertise the works in trade journals or art publications, nor did he take advantage of any free publicity in such publications, to the extent that it was available to him. On his Federal income tax returns, petitioner reported gross income from sales of artist's proofs of $ 5,000.00 in 1980 and $ 6,006.41 in 1981. [8] He reported the following expenses from the art publishing activity: 1980
1981
Bank Charges
$     11.88
$    65.88
Car
3,348.00
3,526.00
Depreciation
15,120.35
16,664.19
Insurance
--    169.00
Interest
--    137.32
Rent
815.33
257.00
Travel and Entertainment
2,285.96
420.00
Production supplies
--    3,331.13
Miscellaneous
292.00
786.00
*79 The bank charges were on petitioner's personal account, which he also used for the art publishing activity. The car expenses were based on the standard rate allowed by the regulations. Some of the mileage was for overnight trips, and some was connected with his law practice. The rent expense is based on a portion of the heat and utility expenses at his residence where he stored the prints. Petitioner claimed a deduction for the depreciation of the screens. He claimed a 10-year useful life for those placed in service before and during 1980 and used the straight-line method of calculating the depreciation allowance. He claimed the silkscreens placed in service in 1981 were 5-year property for purposes of calculating the depreciation allowance under section 168. He claimed his basis was equal to the full contract price, without allocation between the silkscreens and the copyrights. [9] On his 1980 Federal income tax return, petitioner reported the adjusted basis of the silkscreens placed in servce before or during 1980 as $ 381,863, and on his 1981 Federal income tax *80 return, he reported the adjusted basis of those placed in service before or during 1981 as $ 368,501. Petitioner claimed investment tax credits with respect to the silkscreens of $ 8,888.00 in 1980 and $ 2,428.80 in 1981. OPINION The primary issues for decision are whether petitioner's art publishing activity was an activity "not engaged in for profit" under section 183(a) and whether he adequately substantiated the expenses he claimed with respect to that activity. [10]
Whether an activity was engaged in for profit depends upon whether it was carried on with an "actual and honest objective of making a profit." Dreicer v. Commissioner,78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983). *81 Although the expectation need not be reasonable, it must be shown that a bona fide objective of making a profit did exist. Taube v. Commissioner,88 T.C. 464, 478-479 (1987). Profit in this context, as a threshold matter, [11] means economic profit, independent of tax savings. Drobny v. Commissioner,86 T.C. 1326, 1341 (1986). Petitioner's objective is a question of fact to be determined from all of the facts and circumstances, Dreicer v. Commissioner,78 T.C. at 645, and he bears the burden of proof. Taube v. Commissioner,88 T.C. at 480; Rule 142(a). The regulations promulgated under section 183 list nine factors that should be taken into account in determining whether an activity is engaged in for profit. Sec. 1.183-2(b)(1)-(9), Income Tax Regs. This is intended, however, as only a partial list. Sec. 1.183-2(b), Income Tax Regs. We see no need to discuss each factor; rather, we will deal with the entire record in the context of the parties' *82 arguments. See Taube v. Commissioner,88 T.C. at 478-481. Petitioner argues that the time and effort that he expended in the activity and the businesslike manner in which he ran it, combined with his knowledge of the art field (supplemented by consultation with claimed experts), leads to the conclusion that he was carrying on his art publishing activity for profit. Respondent argues that, on the contrary, little time and effort was expended, the activity was not carried on in a businesslike manner and petitioner did not consult experts in the field. Furthermore, according to respondent, the structure of the financing was such that the activity was clearly motivated by tax, rather than economic, profit considerations. We agree with respondent. We note at the outset that petitioner testified to his general belief that he would be able to earn a profit in the art publishing business. Petitioner's belief, however, related only to the time before he began the activity,so it is only marginally relevant to determining whether he was carrying on his art publishing activity with an objective of earning a profit during 1980 and 1981. In any event, we can give little *83 weight to his general belief, because in determining profit motive under section 183 subjective facts are to be given less weight than the objective ones, to which we now turn. See Cherin v. Commissioner,89 T.C. 986, 992 (1987). Petitioner provided no evidence as to the manner in which he carried on the activity other than his own testimony, and much of that testimony was offered to explain gaps in the documentary record. He explained that his sales records were lost in transit between his accountant's office and his lawyer's office during the audit of his Federal income tax returns, and that he was unable to locate the 1981 contract between Linda Southworth and himself. Furthermore, to the extent that he testified that he still had his records, particularly of his expenses, he failed to produce them. [12] Under the circumstances herein, we need not accept his testimony as the Gospel, see Fleischer v. Commissioner,403 F.2d 403, 406 (2d Cir. 1968), affg. a Memorandum Opinion of the Court; Leong v. Commissioner,T.C. Memo. 1977-19, affd. *84 without published opinion 573 F.2d 1291 (2d Cir. 1977), and we agree with respondent that petitioner has not shown that he carried on the activity in a businesslike manner. We also agree with respondent that the personal efforts made by petitioner do not show that he had a profit objective in carrying on his art publishing activity. First, most of the efforts that petitioner described involved selecting artists, not marketing the prints produced by the artists whom he had selected. Petitioner did not present any evidence of the criteria that he used in choosing artists, for example, the artist's reputation or skill, except to state that he hoped to broaden the line of prints that he could offer. Thus, we are unable to determine the value of his efforts in selecting the artists that he published; nor are we able to determine if he had a bona fide basis for anticipating that he would be successful in meeting his professed goal of broadening his line of prints. In addition, we do not think that his minimal efforts toward mail-order *85 marketing are in line with an objective of earning a profit. While choosing artists is an important part of a successful art publishing venture, marketing their work is also an integral part thereof. Petitioner made preliminary efforts to sell the prints by mail, either by himself or in combination with others, but those efforts never passed the planning stage. In addition, he was putting all of his marketing eggs in the mail-order basket. He made no other efforts to increase his retail sales, either by gaining exposure in galleries or through publicity. [13]
We also agree that, based on the evidence of record, petitioner's consultation with others does not demonstrate existence of a profit objective. We have no evidence other than his testimony that he solicited or received advice or of the extent of the advice *86 that was given. In addition, he did not establish that the persons from whom he was soliciting advice were qualified to give it. Finally, the advice that he testified he received concerned legal and financial aspects of the industry, not aesthetic and public demand aspects from which the value of the prints stems. Respondent argues that the structure of the financing indicates petitioner did not have a profit objective, but was instead motivated by potential tax benefits to be derived from the transaction. We agree that the nonrecourse financing makes petitioner's activity suspect. It is well settled that nonrecourse obligations whose repayment is remote and contingent will be disregarded for tax purposes. See Bailey v. Commissioner,90 T.C. 558, 615-616 (1988); Estate of Baron v. Commissioner,83 T.C. 542, 549-550 (1984), affd. 798 F.2d 65 (2d Cir. 1986). In addition, use of such financing tends to indicate that the purchaser was motivated by tax, rather than economic, gain. See Estate of Baron v. Commissioner,83 T.C. at 556; *87 Flowers v. Commissioner,80 T.C. 914, 937 (1983). Here, the notes in question were payable solely out of the proceeds of the prints. Thus, the amount of such proceeds was dependent on public acceptance of limited edition prints in general, [14] the subject matter of the prints in question, the reputations of the individual artists who created the prints, the technical quality of the prints, and the skill and effort that went into marketing them. In addition, the notes were not payable out of the proceeds of the first sales if, as was the case here, the first sales were of artists' proofs rather than of the signed and numbered prints. To the extent that demand for a particular print or artist was limited, the sales of the artist's proofs would satisfy that demand without requiring any payments on the note. Based on these facts, we think that repayment of the notes was simply too speculative and contingent for them to be included in the basis of the assets that petitioner purchased, and that their inclusion therein indicates that petitioner was, at best, indifferent to the potential for profit. See Estate of Baron v. Commissioner, 798 F.2d at 69-70, *88 and 83 T.C. at 560. Thus, petitioner's basis in the silkscreens is limited to the amount of cash paid under the contracts with the artists. See p. 5, supra, and n. 22, infra.
In conclusion, based on all of the facts and circumstances in the record, we hold that petitioner has not carried his burden of proving that he was carrying on his art publishing activity during the years in issue with the objective of earning a profit. We turn now to the question of the allowability of petitioner's claimed deductions. Section 183(b)(1) allows the deduction of those expenses of an activity that is not engaged in for profit which are allowable regardless of whether such activity is engaged in for profit. Section 183(b)(2) allows the deduction of the additional expenses of such an activity to the extent that the income derived therefrom exceeds the otherwise allowable deductions.[15] In determining the allowable deductions under section 183(b)(2), those deductions that *89 do not result in an adjustment to the basis of property are allowed first, and those that do result in an adjustment to basis are allowed only to the extent that income exceeds the sum of otherwise allowable deductions also allowed under section 183(b)(1) and non-basis-adjusting deductions allowed under section 183(b)(2). Section 1.183-1(b)(1)(iii), Income Tax Regs. Deductions leading to an adjustment of property's basis include depreciation deductions. See section 1.183-1(b)(1)(iii), Income Tax Regs. To be entitled to a deduction, petitioner must show that he falls within the terms of the statute granting the deduction, New Colonial Ice Co. v. Helvering,292 U.S. 435 (1934), and he has the burden of proving that he is entitled to the claimed deductions. Wilkinson v. Commissioner,71 T.C. 633, 639 (1979). The only deduction that *90 petitioner claimed that would be allowed regardless of his profit objective was an additional interest expense deduction of $ 137.32 in 1981. See section 163(a). Petitioner presented no evidence substantiating this item. His argument that respondent conceded the full amount of his interest deduction is inapposite, as respondent conceded only that interest deduction which petitioner claimed on Schedule A of his 1981 return. [16] We therefore hold that petitioner has not met his burden of proof, so he is not entitled to a deduction for this amount. Petitioner claimed deductions for travel and entertainment expenses in both 1980 and 1981. Under section 274(d) certain substantiation requirements must be met before deductions for travel and entertainment expenses will *91 be allowed. [17] Under the regulations, section 274 applies to travel and entertainment expense deductions allowable under any provision of chapter 1 of the Code. Sections 1.274-1, 1.274-2(a), Income Tax Regs. The only evidence that petitioner introduced on this issue was a list of his expenses, purportedly an abstract of the entries that he had made in a diary, which was accepted in lieu of his oral testimony. Because the list is merely petitioner's testimony, it does not constitute the substantiation required by section 274(d). No corroborating evidence was introduced, and petitioner does not fit within any of the regulatory exceptions to the substantiation requirements. See section 1.274-5(c), Income Tax Regs. Therefore, petitioner has not met the requirements of the statute and he is not entitled to the claimed travel and entertainment deductions. Sanford v. Commissioner,50 T.C. 823 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969). *92 Petitioner claimed rent expense deductions for part of the heat and utility expenses of his residence, based on his use of a portion of his home to store the prints and to meet customers. Deductions for the business use of a home are limited by section 280A. [18] Deduction of such expenses is allowed if they are "allocable to a portion of the dwelling unit which is exclusively used on a regular basis" for certain business purposes. Section 280A(c)(1). Petitioner presented no evidence that the storage space in which he kept the paintings was used exclusively for that purpose, so he does not meet the terms of this paragraph. Deduction of such expenses is also allowed if they are -- allocable to space within the dwelling unit which is used on a regular basis as a storage unit for the inventory of the taxpayer held for use in the taxpayer's trade or business of selling products at retail or wholesale, but only if the dwelling unit is the sole fixed location of such trade or business. [Sec. 280A(c)(2).] *93 Petitioner has presented no evidence that his dwelling was the sole fixed location of his art publishing activity. In fact, the address he used on his contracts with the artists was of an office in New York City, and he testified that he met with artists at that office. [19] We therefore hold that petitioner is not entitled to the deductions claimed for the use of his home in the art publishing activity. [20]
We turn to the other non-basis-adjusting expenses. Again, petitioner presented no evidence substantiating the amounts spent. Also, he did not allocate expenses that were incurred for both his art publishing and his other personal activities among those activities, or present any basis for making such an allocation. We believe, however, that some of the expenses for which he claimed deductions were incurred for the purposes indicated, and using our best *94 judgment and bearing in mind that petitioner has the burden of proof, we find that 10 percent of the bank charges are properly allocable to petitioner's art publishing activity and that that percentage of those charges should be allowed as a deduction, that deduction of $ 500 in car expenses [21] and $ 250 in miscellaneous business expenses should be allowed in each year, and that deduction of $ 250 in production expenses should be allowed in 1981. See Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930). [22]
We turn to petitioner's claimed depreciation expense *95 under section 167(a). [23]
Petitioner claimed an allowance for depreciation in both 1980 and 1981 for the silkscreens that were used to create the limited edition prints. Respondent argues that the silkscreens are not depreciable assets, because they have a useful life of less than one year, [24] and that, in the alternative, the basis of the silkscreens should be reduced by the amount of the nonrecourse notes, because, among other *96 assertions, the notes are speculative and contingent. Petitioner contends otherwise, and argues that the silkscreens are akin to motion picture negatives, because they may be reused to make other prints of the images, so that depreciation deductions are allowable with respect to them. We agree with respondent. *97 In general, depreciation deductions are allowed only for assets with a useful life of over 1 year, because the costs of assets with useful lives of less than 1 year are not capitalized. Section 1.263(a)-2, Income Tax Regs. C.f. Wolfsen Land & Cattle Co. v. Commissioner,72 T.C. 1, 17 (1979); Webb v. Commissioner,55 T.C. 743, 745 (1971). Useful life is defined in section 1.167(a)-1(b), Income Tax Regs., as: the period over which the asset may reasonably be expected to be useful to the taxpayer in his trade or business or in the production of his income. This period shall be determined by reference to his experience with similar property * * *. If the taxpayer's experience is inadequate, the general experience in the industry may be used * * *. Petitioner bears the burden of proving the useful life of the silkscreens. Associated Obstetricians and Gynecologists, P.C. v. Commissioner,762 F.2d 38 (6th Cir. 1985), affg. per curiam a Memorandum Opinion of this Court; *98 Dielectric Materials Co. v. Commissioner,57 T.C. 587, 592 (1972). It is clear from the record that the silkscreens' primary use was to print the limited edition prints, and that this printing was completed during the first year of the silkscreen's use. Petitioner argues, however, that the silkscreens could also be used in later years to print poster editions of the images. He does not, however, provide us with any evidence of the technical or economic feasibility of such an undertaking, either from his own experience or from the standard practice in the industry. [25] We therefore hold that he has not met his burden of proving the useful life of the asset, and that they therefore are not depreciable. [26] In view of this result, we need not reach respondent's alternative arguments. [27]
*99 Our holding on this issue and the profit-objective issue both determine the issue of petitioner's claimed investment tax credit. Section 38 allows a tax credit for investments in section 38 property as defined in section 48(a). Under section 48(a), section 38 property is, in general, personal property that is recovery property under section 168 or for which depreciation is otherwise allowable under section 167(a). We have determined that silkscreens are the type of property for which depreciation is not allowable under section 167. Furthermore, because petitioner's art publishing activity was not engaged in for profit, depreciation is not allowable under section 167(a) or section 168. In either case, the assets used in the art publishing activity are not section 38 property within the meaning of section 48(a) and no investment tax credit is allowable. [28]
*100 We turn to the additions to tax determined by respondent. Respondent determined that petitioner is liable under section 6621(c) for interest on part of the underpayments for 1980 and 1981 at 120 percent of the statutory rate. That section provides that additional interest will be due if a "substantial underpayment" (that is, an underpayment of more than $ 1,000) is attributable to a "tax motivated transaction." Certain transactions are deemed to be "tax motivated" by section 6621(c)(3)(A). In addition, the Secretary of the Treasury is given authority to promulgate regulations specifying additional transactions that are to be deemed tax motivated. Section 6621(c)(3)(B). By these regulations, any losses disallowed under section 183 because an activity was not engaged in for profit are attributable to a tax-motivated transaction. Section 301.6621-2T, Q-4 & A-4, Temporary Proced. & Admin. Regs., 49 Fed. Reg. 59394 (Dec. 28, 1984). Here, we have found that petitioner engaged in his art publishing activity without a profit objective under section 183. Therefore, we find *101 that this was a tax-motivated transaction, and petitioner is liable for additional interest in respect of 1980 and 1981 on the part of the interest allocable to that transaction accruing after December 31, 1984. See Patin v. Commissioner,88 T.C. 1086, 1129 (1987), affd. without published opinion sub nom. Hatheway v. Commissioner,856 F.2d 186 (4th Cir. 1988), affd. sub nom. Skeen v. Commissioner,864 F.2d 93 (9th Cir. 1989). Respondent also determined that petitioner was liable for a delinquency addition under section 6651(a)(1) for failure timely to file his 1980 return. Petitioner's Federal income tax return was due, pursuant to an extension, on October 15, 1981. It was filed on June 23, 1982. Petitioner has introduced no evidence showing that his failure to file a timely return was due to reasonable cause. We therefore uphold respondent's determination. Finally, respondent determined that petitioner was liable for an addition to tax in respect of 1981 for an underpayment attributable to a valuation overstatement under *102 section 6659. That section imposes a graduated addition to tax on underpayments of more than $ 1,000 that are attributable to valuation overstatements. "[T]here is a valuation overstatement if the value of any property, or the adjusted basis of any property, claimed on any return is 150 percent or more of the amount determined to be the correct amount of such valuation or adjusted basis * * *." Section 6659(c). Here, we have held that petitioner's basis in the silkscreens is limited to the cash paid to the artists.[29] Thus, any claimed depreciation deduction based on a higher basis (that is, a basis including the nonrecourse notes) in excess of the depreciation deduction based on the correct basis leads to an underpayment of tax attributable to a valuation overstatement as that term is defined in section 6659(c). The same is true of the claimed investment tax credit, which was calculated on both the cash and the nonrecourse notes. Zirker v. Commissioner,87 T.C. 970 (1986); Warren v. Commissioner,T.C. Memo. 1989-34. *103 We do not believe that Todd v. Commissioner,89 T.C. 912 (1987), affd. 862 F.2d 540 (5th Cir. 1988), requires a different result. In that case, neither the existence or amount of basis was involved nor did the value or cost of the property enter into our determination that the failure to place the property in service deprived the taxpayer of the depreciation deduction and investment credit. [30] The same analysis applies to Soriano v. Commissioner,90 T.C. 44, 61 (1988), where we held that section 6659 did not apply to that portion of a deficiency attributable to disallowed advance rental deductions. In Zirker and Warren, the question was whether the taxpayer acquired the requisite interest in the property so that the existence of basis was clearly at issue. In the instant case, the value and/or the basis of the silkscreens was an integral element in our determination of whether petitioner's art publishing activity was an activity carried on for profit under section 183, and our holding directly affects the amount shown on petitioner's tax return. Therefore, the amount of the underpayment attributable to a valuation overstatement *104 may be calculated. Cf. Irom v. Commissioner,     F.2d     (2d Cir., Jan. 20, 1989), revg. a Memorandum Opinion of this Court; see Soriano v. Commissioner,90 T.C. at 60. [31] We do not read the comments of the Fifth Circuit Court of Appeals in Todd v. Commissioner, 862 F.2d at 545, with reference to the impact of a possible attempt by taxpayers to deny the existence of a profit motive in order to avoid the application of section 6659, as undermining this conclusion. To reflect the foregoing and concessions of the parties, Decisions will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect during the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Now sec. 6621(c)↩. Tax Reform Act of 1986, Pub. L. No. 99-514, sec. 1511(c), 100 Stat. 2744. Hereinafter, we use the reference as redesignated. 3. In his notice of deficiency, respondent disallowed a casualty loss deduction claimed by petitioner. Petitioner disputed this determination in his petition, but has presented no evidence on the issue, and we deem it to be conceded. In addition, in his petition, petitioner challenged the notice of deficiency on a variety of grounds. However, he introduced no evidence on these points, nor has he pressed them on brief, and we therefore deem them to be conceded as well.↩
4. An art publisher is a person who purchases the underlying means of producing a print and then, either with his own facilities or by contracting the work to another person, has prints produced and sold.↩
5. An image is the subject matter of a print; a print is a reproduction of the image. Each silkscreen printed one color of the complete print. A plate was defined in the contracts as all the screens necessary to create a print. ↩
6. All of the contracts, except the first, allocated $ 25 of the purchase price to the purchase of each copyright.↩
7. Artist's proofs are additional reproductions of the images that are not numbered as part of the limited addition series. A limited number of these were retained by the artist.↩
a. Each artist was to receive 10 of the proofs, except Linda Southworth was to receive 9 under the 1979 contract only. ↩
b. Dated November 1, 1978. ↩
c. Dated December 28, 1979, as were the notes given Linda Southworth under the contract dated December 27, 1979. ↩
d. Pat Hammerman received an additional $ 252, apparently for participating in the production of the prints. Petitioner included this amount in the basis of the silkscreens. ↩
e. Petitioner included an additional $ 1,477 in cash paid to Linda Southworth in the basis of these silkscreens. ↩
f. Dated December 1, 1980.↩
8. No payments were due on the promissory notes out of the proceeds of the sales of the artists' proofs.↩
9. See n. 6, supra.↩ He also did not claim any basis in the prints, so his cost of goods sold was zero in both years.
10. Respondent also determined that petitioner's losses exceeded the amount that he had at risk in the activity under section 465. In view of our holding on the issue of petitioner's profit objective, we need not reach that issue.↩
11. See Estate of Baron v. Commissioner,83 T.C. 542, 557-558 (1984), affd. 798 F.2d 65↩ (2d Cir. 1986).
12. These included a diary of the car mileage and a diary with vouchers and receipts of his travel and entertainment expenses.↩
13. There is no indication in the record as to how the sales that were actually made were solicited. The fact that some of petitioner's prints were on display at a gallery at the time of trial, in December 1987, is not relevant to determining what marketing efforts petitioner made during 1980 or 1981, or to the existence of a profit objective during those years.↩
14. We note in this regard that petitioner agrees that the art business is in general highly speculative.↩
15. Thus, section 183 is often termed an allowance provision. See, e.g., Elliott v. Commissioner,90 T.C. 960 (1988); Waddell v. Commissioner,86 T.C. 848, 891 n. 20 (1986), affd. 841 F.2d 264↩ (9th Cir. 1988).
16. The stipulation provides: The following adjustment relating to the taxable year 1981 has been agreed to by the parties: The petitioner shall be allowed in 1981 a deduction in the full amount of $ 12,554.28 attributable to interest expenses. Total interest expense claimed on Schedule A and disallowed was $ 12,554.28.↩
17. That subsection provided in pertinent part during the years in issue: (d) Substantiation Required. -- No deduction shall be allowed -- (1) under section 162 or 212 for any traveling expense (including meals and lodging while away from home), (2) for any item with respect to an activity which is of a type generally considered to constitute entertainment * * * unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement (A) the amount of such expense * * * (B) the time and place of the travel, [or] entertainment * * * (C) the business purpose of the expense * * * and (D) the business relationship to the taxpayer of persons entertained * * *. The Secretary may by regulations provide that some or all of the requirements of the preceding sentence shall not apply in the case of an expense which does not exceed an amount prescribed pursuant to such regulations.↩
18. Section 280A(a)↩ provides in pertinent part: "Except as otherwise provided in this section, in the case of a taxpayer who is an individual * * * no deduction otherwise allowable under this chapter shall be allowed with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence."
19. In this regard, see Garvey v. Commissioner,T.C. Memo. 1982-176↩. 20. We note that petitioner presented no evidence substantiating the amounts of the dwelling's heat and utility expenses or of the method or reasonableness of his allocation of such expenditures to his art publishing activity.↩
21. We note that some of the car mileage was for overnight trips so as to be subject to the substantiation requirements of section 274(d)↩. Petitioner has not met those requirements, nor has he given us a basis to allocate between local and overnight travel. 22. The parties stipulated that petitioner made various cash payments during the years in issue other than those to the artists that were required under the contracts. Petitioner has made no effort to enlighten us as to the proper tax treatment of those payments, nor is the treatment he afforded such payments apparent from his income tax returns.↩
23. That section provides in part as follows: There shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence) -- (1) of property used in the trade or business, or (2) of property held for the production of income. In the case of recovery property (within the meaning of section 168), the deduction allowable under section 168 shall be deemed to constitute the reasonable allowance provided by this section * * *. The last sentence applies to property placed in service after December 31, 1980. Economic Recovery Tax Act, Pub. L. 97-34, sec. 203(a), 97 Stat. 221.↩
24. In his reply brief, petitioner claims that the useful-life issue was only raised for 1980, because it was explicitly mentioned only in the notice of deficiency for that year and not in the notice of deficiency for 1981. Clearly, the issue of petitioner's claimed depreciation deductions was raised in both notices. Thus, only the grounds for the issue is questioned. We have inherent authority to uphold respondent's determination on grounds not raised in the notice of deficiency, and will do so if petitioner is not surprised or prejudiced by the ground. See Leahy v. Commissioner,87 T.C. 56, 64-65 (1986). Of key importance in determining whether petitioner is surprised or prejudiced is the need for additional evidence that the new ground raises. Leahy v. Commissioner,87 T.C. at 64. We think it is clear that petitioner is not prejudiced by this ground for disallowing the depreciation deduction in 1981. The notices of deficiency for both years disallowed all deductions relating to the art publishing activity, including the depreciation deductions, and asserted the broad ground that they had not been substantiated. We think that the issues of depreciable character and useful life of the asset are arguably embodied within that ground. Furthermore, the issue was raised by respondent's trial memorandum for both years, and petitioner did not object. Finally, petitioner was able to prepare for trial and try both years at the same time, and the factual issues with respect to the depreciable character of the property for purposes of the 1981 depreciation deductions were either identical or nearly identical to those with respect to the depreciable character of the property for purposes of the 1980 depreciation deduction. Thus, we hold that petitioner was not prejudiced by respondent's assertion that the property was not depreciable in 1981.↩
25. The cases petitioner cites in support of his position are not on point. Walt Disney Productions v. United States,480 F.2d 66 (9th Cir. 1973), dealt primarily with the question of whether film negatives were tangible or intangible property for purposes of the investment tax credit, and merely affirmed the District Court's finding as to the useful life of the assets. See Walt Disney Productions v. United States,327 F. Supp. 189 (C.D. Cal. 1971). Texas Instruments v. United States,551 F.2d 599 (5th Cir. 1977); Walt Disney Productions v. United States,549 F.2d 576 (9th Cir. 1977); and Ronnen v. Commissioner,90 T.C. 74, 97-100↩ (1988), are also distinguishable.
26. Nor can we sustain the payments for the silkscreens as an expense within the limits of sec. 183. It seems clear that the cost of the silkscreens would be considered part of the cost of the inventory of prints and therefore considered cost of goods sold. Rev. Rul. 79-432, 1979-2 C.B. 289. Petitioner does not, however, argue that the cost of the silkscreens should be included in the cost of his inventory of prints and hence deducted as cost of goods sold as the prints are sold, and we make no judgment as to the propriety of such treatment. In any event, on the record before us, even if we could determine the inventoriable costs of the prints, we cannot determine which prints were actually sold in 1980 and 1981, so we would be unable to determine the proper deduction for cost of goods sold in the particular year. In this connection, we note that the speculative and contingent nature of the nonrecourse notes would not be includable in cost of goods sold except to the extent paid during the taxable year in question. Cf. Waddell v. Commissioner,86 T.C. 848, 910 (1986), affd. 841 F.2d 264↩ (9th Cir. 1988). 27. Petitioner also does not argue that some part of the purchase prices should be allocated to purchase of the copyrights and amortized over the life thereof (see n.6, supra↩), and we make no determination as to the propriety of that treatment.
28. The allowance of deductions under sec. 183(b)(2) up to the amount of income from the activity, see p. 16, supra, does not include allowance of the investment tax credit. Finoli v. Commissioner,86 T.C. 697, 744↩ (1986).
29. That is, $ 300 per silkscreen for the Zarebski silkscreens, $ 200 per silkscreen for the Hammerman and 1979 Southworth silkscreens, and $ 250 per silkscreen for the 1980 Southworth silkscreens.↩
30. See also Suna v. Commissioner,T.C. Memo. 1988-541, where the issue was whether a charitable gift had been made; Chellappan v. Commissioner,T.C. Memo. 1988-208↩, where we held that where no asset ever existed, the question of basis never came into play. 31. See also Smith v. Commissioner,T.C. Memo. 1988-420↩.